UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IN RE: ACTOS (PIOGLITAZONE) PRODUCTS LIABILITY LITIGATION | MDL NO. 6:11-md-2299 |
| This document applies to: | JUDGE DOHERTY |
| SAFDAR LILAK V. TAKEDA PHARMACEUTICALS USA, INC., ET AL. | |
| CASE NO. 6:12-cv-00411 | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

This matter is before the court pursuant to a Conditional Transfer Order entered by the United States Judicial Panel on Multidistrict Litigation on February 9, 2012 (Rec. Doc. 21). For the reasons fully explained below, the undersigned recommends that a suggestion of remand be submitted to the Panel suggesting it remand this action to the United States District Court for the District of Colorado.

### BACKGROUND

*Pro se* plaintiff Safdar Lilak filed a products liability action against Takeda Pharmaceuticals U.S.A., Inc. ("Takeda") in the United States District Court for the District of Colorado on December 27, 2011. (Rec. Doc. 1)  Mr. Lilak claims he sustained a multitude of injuries from his use of ACTOS, a drug manufactured by Takeda, ostensibly to treat symptoms of diabetes following a motor vehicle accident

in 2002 in which he sustained low back, knee and shoulder injuries. (Rec. Doc. 1)[1] Mr. Lilak's action against Takeda was conditionally transferred to this Court on February 9, 2012 for inclusion in the MDL without objection. (Rec. Doc. 21)

On April 13, 2012, orders were entered which appointed special masters and instructions on how to communicate with the Court. (Rec. Doc. 36). Mr. Lilak has not followed those instructions and between April 2012 and mid-July 2012, he submitted to the undersigned's email address numerous informal and extremely voluminous documents including discovery material, (despite the court-ordered stay on discovery) amendments to his complaint, communications with defense counsel, "comments from the plaintiff," voluminous medical records and "evidentiary documents".[2]

Given the *thousands* of pages submitted to this Court by e-mail, most of which were duplicative or of no substantive benefit, Mr. Lilak was ordered to appear for an evidentiary hearing in the nature of a motion for more definite statement of claims under Fed. R. Civ. P. 12(e) and to insure compliance with LR 11.1 (Rec. Doc. 53).

---

[1] The alleged injuries change from pleading to pleading, but in the initial complaint they include heart attacks, strokes, bone degeneration, exacerbations of his knee and shoulder injuries, chest pain, blood clots, strokes, gastrointestinal problems, and stomach irregularities. Completely absent from any pleading is that he suffers from bladder cancer, and when questioned, Mr. Lilak admitted no doctor has ever diagnosed him with bladder cancer. (Rec. Doc. 76, p. 11)

[2] The email address was initially set up to accommodate urgent or emergency filings when a case that had been transferred by CTO had not yet been given a docket number in this MDL. Mr. Lilak has never used it for that purpose.

Mr. Lilak filed two responses (Rec. Doc. 55, 63) to which the defendant replied. (Rec. Doc. 59)

Mr. Lilak's filings are largely rambling statements of law and the exhibits contain numerous medical records. This Court was particularly drawn to Rec. Doc. 63-1, pp. 128-132 in which Dr. Don Schneider, who treated Mr. Lilak from 2002-2005 and again from 2009-2010, reports the medications Mr. Lilak has been provided and the symptoms/complaints he has had all of which were linked to the aforementioned automobile accident and subsequent surgeries. The medications include Bextra, Celebrex, Vioxx, Nexium, Prilosec, Zicam, and a number of others. The symptoms/complaints are similar, if not identical, to the symptoms/complaints made in the instant case.

Based on the defendant's submission, over the past few years, Mr. Lilak has had five other lawsuits against pharmaceutical companies in which he alleges the same or similar injuries/disease processes as he alleges in this suit from the use of their drugs. (Rec. Doc. 59, Ex. F-J) The lawsuits allege these injuries/disease processes arose from the use of medications he was prescribed following the automobile accident and include Bextra, Celebrex, Vioxx, Nexium, Prilosec, Zicam, and Paxil. (Rec. Doc. 59, Ex. K) Some of the lawsuits have been dismissed, but as of the CTO,

the ones pending in Colorado had been designated as related for disposition by the District Court in Colorado. (Rec. Doc. 59, Ex. K)

The evidentiary hearing took place via video conference on July 27, 2012. Mr. Lilak appeared by video conference at his request and based on his demeanor and responses to questions, the undersigned finds him to be a competent witness. Mr. Lilak did not dispute the existence of the lawsuits against the other drug manufacturers. Given the unique characteristics of his claimed injuries in this suit against Takeda and the similar, if not identical, claimed injuries/disease processes made against all the other drug manufacturers, the possibility of remanding the case to the Colorado district court in which it was originally filed was discussed.

Mr. Lilak thought the MDL would be more expedited than the process in Colorado and wanted this Court to provide him with a "shortcut or brief decision." (Rec. Doc. 76, p. 4) This was consistent with a letter he sent to this Court admitted as Court Ex. 1 in which he asked for summary judgment or partial summary judgment even though a Case Management Order had not yet been entered. At the hearing he initially objected to a remand because he thought this MDL would "be more expedited and more coordinated in a group as compared to the individual cases." (Rec. Doc. 76, p. 11) He has repeatedly referenced the issue of settlement in his filings and correspondence with this Court even before the publication of basic foundational

orders.  In short, he is of the belief that this litigation will provide him a quicker and more economical resolution to his case than he would receive in Colorado without regard to the underlying factual allegations he has made.

After the hearing, Mr. Lilak conferred with Deputy Special Master Dejean, who deals with matters primarily involving the plaintiffs, the representative for the state of Colorado on the Plaintiff's Steering Committee (PSC), and the PSC Liason Counsel.  After discussion, it was communicated to the undersigned that Mr. Lilak did not object to remand.[3]

## APPLICABLE LAW

Under 28 U.S.C.§1407(a), a case transferred by CTO can be remanded to the district court from which it originated "at or before the conclusion" of pretrial proceedings.  The rules for multidistrict litigation allow the transferee judge to recommend remand of an action to the transferor court at any time by filing a suggestion of remand with the Judicial Panel on Multidistrict Litigation.[4]  Rule 10.1(b) further states that the Panel may remand an action upon (i) the transferee court's suggestion of remand, (ii) the Panel's own initiative by entry of an order to

---

[3] Since the hearing, Mr. Lilak has related to this Court through Mr. Dejean that he changed his mind and now does object to remand.

[4] Judicial Panel on Multidistrict Litigation, Rule 10.1(b), 42 U.S.C.A. foll. § 1407 (2012).

show cause, a conditional remand order or other appropriate order, or (iii) motion of any party.[5]

The Panel has consistently given "great weight" to a transferee judge's determination that remand is appropriate at a particular time.[6] However, since the power to transfer lies solely with the Panel, in deciding whether to remand a matter to the transferor court, the transferee judge is guided by the same standards as the Panel.[7]

Remand of an action back to the transferor court should only occur for good cause.[8] The court's discretion to suggest remand generally turns on whether the case will benefit from further coordinated proceedings as part of the MDL.[9] Remand is also considered appropriate when that which remains to be done is case specific.[10] However, remand should not occur when continued consolidation will eliminate

---

[5] *Id*.

[6] *In re Columbia/HCA Healthcare Corp. Qui Tam Litig.*, MDL No. 1307, 560 F.Supp.2d 1349, 1350 (J.P.M.L. 2008) citing *In re IBM Peripheral EDP Devices Antitrust Litigation,* 407 F.Supp. 254, 256 (J.P.M.L. 1976).

[7] *In re Bridgestone/Firestone ATX, ATX II.*, 128 F.Supp.2d 1196, 1197 (S.D. In. 2001).

[8] *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030(LAP), 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010).

[9] *Id.*, *In re Bridgestone/Firestone ATX, ATX II* at 1197; *In re Air Crash Disaster*, 461 F.Supp 671, 672-673 (J.P.M.L. 1978)/

[10] *In re Bridgestone/Firestone ATX, ATXII* at 1197; See also *In re Patenaude* 210 F.3d 135, 145 (3rd Cir. 2000).

duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.[11]

## DISCUSSION

The presence of unique factors in this case renders a suggestion of remand appropriate. Mr. Lilak does not allege that he has contracted bladder cancer from his use of the drug Actos - the centerpiece of this MDL. Rather, the claims that Mr. Lilak has filed against Takeda are the same claims he has filed against all of the other pharmaceutical companies in Colorado arising out of the same set of operative facts, to wit, medications prescribed following an automobile accident and its sequelae.

Mr. Lilak alleges a myriad of medical problems which he attributes to the use of each of the pharmaceutical companies' products. Some of those cases have been resolved, but on what basis this Court is unaware. The cases pending in the district of Colorado had been designated as related and assigned to the same Judge/Magistrate Judge for disposition. The degree to which there is some causal interelationship between a combination of these drugs and his claimed injuries is more particularly suited to the court which has dealt with his other claims rather than this MDL. Therefore, allowing his case to remain consolidated in this MDL would not prevent

---

[11] *In re Merrill Lynch Auction Rate Sec. Litig.*, 2010 WL 2541227 at *2 citing *In re Heritage Bonds Litigation,* 217 F.Supp2d 1369, 1370 (J.P.M.L. 2002).

inconsistent pretrial rulings. On the contrary, failing to remand his case creates the greatest possibility of inconsistent pretrial rulings.

This MDL, while progressing at an admirable pace, is still in its nascent stage and discovery has only recently begun. There will be significant financial costs involved in this case that have nothing to do with the injury/disease processes Mr. Lilak alleges in his multiple complaints and has documented in his medical records. Mr. Lilak does not have, nor has he ever had, bladder cancer. Therefore, he will not benefit from the expected expert opinions. Nonetheless, he would be expected to bear a portion of the costs, not only for discovery of questionable relevance to his claims, but for experts as well.

Whether this plaintiff would ever be considered for bellweather purposes, although admittedly somewhat speculative, is unlikely given the absence of any allegations of bladder cancer and the commonality of injuries/disease processes he alleges were caused by other drugs that are at issue in litigation pending in Colorado. Further, it is likely that the first bellweather trials will not occur for over a year from now, and those trials may be of no benefit to his case given the unusual characteristics of his claimed injuries/disease processes. Therefore, allowing his case to remain consolidated in this MDL will not eliminate duplicative discovery or conserve the resources of the court or the parties.

Moreover, as can be seen from his submissions, Mr. Lilak's claims are very case specific. His similar, if not identical, allegations of the effects of the drugs manufactured by not only Takeda, but the other pharmaceutical companies, will likely not ever be taken up in this MDL given the complete absence of any allegation that he has, or has had, bladder cancer.

## CONCLUSION and RECOMMENDATION

Under this unique set of allegations, this Court concludes that good cause exists to remand Mr. Lilak's case to the transferor court. As a pro se plaintiff, it is apparent Mr. Lilak has misunderstood the nature of these proceedings and what his obligations are to the Court and the parties. Remand will not result in inconsistent pretrial rulings or create duplicity in discovery. The goal of conserving the resources of the parties and the court will be better served by remand, and therefore, this case will not benefit from further coordinated proceedings in the MDL. Further, because the claims are case specific, the role of the transferee court in this matter has likely ended. Therefore, the undersigned recommends that this matter be remanded to the United States District Court for the District of Colorado.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 19th day of November 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE