RECEIVED

NOV - 7 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE: ACTOS (PIOGLITAZONE)          MDL NO. 6:11-md-2299
PRODUCTS LIABILITY LITIGATION

This document applies to:

GREG BOWERMAN, INDIVIDUALLY          JUDGE DOHERTY
AND AS A CLASS REPRESENTATIVE
ON BEHALF OF ALL TAXPAYERS
WITHIN THE STATE OF ARKANSAS

VERSUS

TAKEDA PHARMACEUTICALS            MAGISTRATE JUDGE HANNA
NORTH AMERICA, INC., ET AL.
CASE NO. 12-CV-01590

## MEMORANDUM AND CERTIFICATION ORDER

This case involves important and determinative questions of Arkansas law as to which there is no controlling Arkansas precedent. Accordingly, this Court hereby certifies those unresolved questions to the Supreme Court of Arkansas.

>       CERTIFICATION FROM THE UNITED STATES DISTRICT
>       COURT FOR THE WESTERN DISTRICT OF LOUISIANA TO
>       THE SUPREME COURT OF ARKANSAS, PURSUANT TO
>       SECTION 2(d)(3) OF AMENDMENT 80 TO THE ARKANSAS
>       CONSTITUTION AND RULE 6-8 OF THE RULES OF THE
>       SUPREME COURT AND COURT OF APPEALS OF THE
>       STATE OF ARKANSAS

**TO THE SUPREME COURT OF ARKANSAS AND THE HONORABLE JUSTICES THEREOF:**

**I.      Style of the Case: Parties and Counsel.**

The style of the case is "In re: Actos (Pioglitazone) Products Liability Litigation: Greg Bowerman, Individually and as a Class Representative on Behalf of All Taxpayers Within the State of Arkansas v. Takeda Pharmaceuticals North America, Inc., et al." This is case number

12-cv-01590, in the United States District Court for the Western District of Louisiana.  Federal

jurisdiction is premised upon 28 U.S.C. § 1332 (Diversity).

The names of all of the parties to the case, all but one of which is represented by counsel,

and their respective names, addresses, and telephone numbers of their counsel, are as follows:

- *Greg Bowerman, Plaintiff*, represented by: Luther Oneal Sutter, Sutter & Gillham, P.O. Box 2012, Benton, AR 72018, telephone number (501) 315-1910.

- *Takeda Pharmaceuticals U.S.A., Inc. formerly known as Takeda Pharmaceuticals North America, Inc.; Takeda Global Research & Development Center, Inc.; Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals America, Inc., Takeda California, Inc. formerly known as Takeda San Diego, Inc., Takeda Pharmaceuticals International, Inc., and Takeda Pharmaceuticals LLC, Defendants*, represented by: Sara J. Gourley, Sidley Austin, 1 South Dearborn Street, 48th Floor, Chicago, IL 60603, telephone number (312) 853-7000.

- *Eli Lilly Company, Defendant*, represented by: Sara J. Gourley, Sidley Austin, 1 South Dearborn Street, 48th Floor, Chicago, IL 60603, telephone number (312) 853-7000.

- *Stephen L. LaFrance Pharmacy, Inc., Defendant* (not represented by counsel).

## II.     Statement of the Case

This multidistrict litigation arises from product liability claims against the manufacturer

and marketer of Actos® and other drugs containing pioglitazone.  Pending before this Court is a

Motion to Dismiss for Failure to State a Claim,[1] filed by the Takeda Defendants[2] and Eli Lilly

Company (collectively "Defendants").[3]  The Defendants seek, pursuant to Federal Rule of Civil

Procedure 12(b)(6), the dismissal of the Plaintiff's claims in their entirety.

---

[1] Rec. Doc. 98; MDL Rec. Doc. 2793.

[2] The "Takeda Defendants" are: Takeda Pharmaceuticals U.S.A., Inc. formerly known as Takeda Pharmaceuticals North America, Inc.; Takeda Global Research & Development Center, Inc.; Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals America, Inc., Takeda California, Inc. formerly known as Takeda San Diego, Inc., Takeda Pharmaceuticals International, Inc., and Takeda Pharmaceuticals LLC.

[3] Bowerman has also sued Stephen L. LaFrance Pharmacy, Inc., which has not expressly joined the motion pending before this Court.  This Court notes that, other than Paragraph 11 of the Amended Complaint – where the

## PROCEDURAL BACKGROUND

The instant action is brought by Greg Bowerman, who sometimes describes his claim as being one on behalf of the "State of Arkansas," and other times describes himself as a representative of a constitutional class action of citizen-taxpayers of the State of Arkansas.[4]  As to the former claim, however, Bowerman has not identified any source of authority (whether in his Complaints or in his briefing) to assert such a status.  Bowerman's silence on the point is important because the Defendants' motion contains an argument challenging Bowerman's authority to assert a *parens patriae* claim on behalf of the State of Arkansas.  Considering this challenge, together with the fact that United States District Judge D.P. Marshall, Jr., of the Eastern District of Arkansas, while this matter remained pending before him, summarily dismissed any idea that Bowerman might have such authority,[5] this Court finds that either Bowerman never intended to assert a claim on behalf of the State of Arkansas (and is guilty merely of being inattentive in the formation of his allegations) or he has abandoned any such effort.

In either event, Bowerman cites the sole source of his authority to assert a claim against these defendants as Article 16, § 13 of the Arkansas Constitution.  The Supreme Court of Arkansas has declared that any plaintiff who alleges that he is a taxpaying citizen of the State of Arkansas has standing to assert an illegal exaction claim under Article 16, § 13 of the Arkansas

---

pharmacy is identified as a defendant – the Complaint contains not a single allegation about the pharmacy whatsoever.  It is not possible to ascertain, from the Amended Complaint, what theory of liability Bowerman might have against the pharmacy, raising the very serious question of why it was named as a party to this litigation.

[4] *See* Amended Complaint, Rec. Doc. 3, at ¶¶ 60, 65, Prayer; Responsive Brief (Rec. Doc. 114), at 1 (Caption).

[5] Rec. Doc. 11, at 2.

Constitution.[6]  Moreover, the Supreme Court of Arkansas has plainly stated that Article 16, § 13 creates a constitutional class action as a matter of law.[7]  "By the terms of the Arkansas Constitution, Article 16, Section 13, every inhabitant of the area affected by the alleged illegal exaction is a member of the class.  Every citizen who is an inhabitant of the affected area is regarded as a party to the illegal-exaction lawsuit and is bound by the judgment."[8]  This Court finds that Bowerman has asserted claims in this matter solely in his capacity as the representative of a constitutional class of citizen-taxpayers of the State of Arkansas.  It is in this capacity that his claims and his arguments will be considered by this Court.

This case was filed originally in Saline County Circuit Court.  It was removed to the U.S. District Court for the Eastern District of Arkansas-Western Division on March 12, 2013.[9]  After remand was denied by Judge Marshall,[10] the U.S. Judicial Panel on Multidistrict Litigation ("JPML") entered a Transfer Order pursuant to 28 U.S.C. § 1407, transferring this action to this Court on June 15, 2012.[11]  Approximately one year later, pursuant to leave granted by this Court, the Defendants filed the pending motion to dismiss.[12]  Bowerman filed his Response to Takeda and Eli Lilly's Motion to Dismiss for Failure to State a Claim on July 3, 2013.[13] The Defendants have not sought leave to file a reply; therefore, the motion is ripe for this Court's consideration.

---

[6] Chapman v. Bevilacqua, 344 Ark. 262, 270, 42 S.W.3d 378, 383 (Ark 2001).

[7] Carwell Elevator Company, Inc. v. Leathers, 352 Ark. 381, 387, 101 S.W.3d 211, 216 (Ark. 2003) (numerous citations omitted).

[8] See, e.g., Worth v. City of Rogers, 351 Ark. 183, 191, 89 S.W.3d 875, 880 (2002).

[9] Rec. Doc. 1.

[10] Rec. Doc. 11.

[11] Rec. Doc. 16.

[12] Rec. Doc. 98.

[13] Rec. Doc. 114.

## FACTUAL ALLEGATIONS[14]

Bowerman's allegations are as follows:

The Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling pioglitazone, under the trade name "Actos," for the treatment of Type II diabetes mellitus.[15]   Actos® was approved by the Food and Drug Administration ("FDA") in July of 1999 as a treatment for diabetes and is sold in several forms.[16]   It is alleged Pioglitazone has caused bladder cancer and other side effects, through a defective design and/or flaws in manufacturing.[17]

Intentionally or otherwise, it is alleged Defendants violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, et seq., including both statutory and regulatory standards.[18]   It is alleged Defendants knew or should have known that Actos® had the potential to cause bladder cancer, heart attacks and other cardiovascular problems,[19] and concealed their knowledge of these potential side effects from the public as well as the State of Arkansas and its physicians.[20] As a result of being prescribed Actos® for many years, Plaintiff alleges Arkansas citizens have been permanently and severely injured, having suffered serious consequences from long-term

---

[14] As required by law, this Court will accept all well-pleaded facts as true and will view those facts in the light most favorable to the plaintiff for these purposes, only.  Bustos v. Martini Club, Inc., 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).   The noted procedurally mandated acceptance, of course, in no way whatsoever, reflects an opinion of any nature, by this Court as to any facts within this case.

[15] Amended Complaint (Rec. Doc. 3), at ¶¶ 17, 55.

[16] Id. at ¶¶ 18, 20.

[17] Id. at ¶¶ 22-25, 27, 29, 31, 34, 41, 48-50.

[18] Id. at ¶¶ 44-46.

[19] Id. at ¶ 21, 33.

[20] Id. at ¶¶ 23, 26, 33, 35, 37, 42, 56, 61.

Actos® use.[21]   As a result, it is alleged the State and its prescribing physicians were unaware, and could not reasonably have known or have learned through reasonable diligence, that Arkansas citizens whose health care is subsidized with public funds were being exposed to the risk of the side effects described above, and that those risks were the direct and proximate result of the Defendants' acts, omissions, and misrepresentations.[22]

The State of Arkansas provides reimbursement for medical products and services provided to some of its citizens.  Under the State program, Arkansas citizens were prescribed and began taking Actos® upon direction of their physicians; some citizens subsequently developed bladder cancer and other side effects, allegedly caused by Actos®. [23]   It is alleged Arkansas citizens have (and had) several safer alternative products available to treat the conditions they have.[24]   Moreover, Arkansas citizens and physicians allegedly have not been adequately warned about the significant risks and lack of benefits associated with long-term Actos® therapy.[25]

Additionally, the Defendants allegedly engaged in unfair methods of competition and unfair and deceptive trade practices by making false representations that Actos® was better at lowering blood sugar than existing medications and could decrease diabetics' cardiovascular risks.  As a result, plaintiff alleges the State of Arkansas spent millions of its citizens' dollars on an overpriced, harmful drug.

Plaintiff further alleges the State of Arkansas, and its citizens, have borne (and continue to bear) the treatment costs for heart attacks, heart injury, excessive fluid retention, fluid

---

[21] Id. at 41.

[22] Id. at ¶ 38, 52, 53.

[23] Id. at ¶ 39, 55.

[24] Id. at ¶ 51, 36.

[25] Id. at ¶¶ 38, 52, 53.

overloaded disease, liver damage, liver failure, strokes and/or severe injury to the heart leading to cardiac arrest, bladder cancer, and death, allegedly caused by Actos®.[26] The State allegedly would not have purchased Actos® for the benefit of its citizens had Defendants properly disclosed the risks associated with its long-term use.[27] Therefore, the taxpayers of Arkansas allegedly have paid public funds to the Defendants that, absent the Defendants' illegal actions, would have remained in the Treasury.[28] As a further result of the Defendants' actions and inactions, it is alleged the State Treasury was diminished because the State paid to treat Arkansas citizens injured due to the ingestion of Actos®, which caused and will continue to cause Plaintiff various injuries and damages.[29]

Bowerman seeks the following remedies:

- a refund of money spent to purchase Actos®-related medications;[30]

- a refund of money previously spent to treat damages caused by Actos®-related medications;[31]

- a refund of money that will be required in the future to treat damages caused by Actos®-related medications;[32]

- various elements of equitable relief (declaratory judgments, injunctive relief, etc.) associated with the process of establishing a common fund for the benefit of patients who took Actos®;[33] and

---

[26] Id. at ¶ 58.

[27] Id. at ¶ 40.

[28] Id. at ¶ 59.

[29] Id. at ¶ 43.

[30] Id. at ¶ 41.

[31] Id.

[32] Id. at ¶ 57.

[33] Id. at ¶ 62-3, Prayer.

- attorney fees and costs.[34]

## LAW AND ANALYSIS

### A.   STANDARD OF REVIEW

The Defendants seek dismissal of Bowerman's claims pursuant to Rule 12(b)(6).   In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face.[35]   Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36]   In making this determination, a Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.[37]   Furthermore, the jurisprudence instructs that determining whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[38]

### B.   APPLICABLE LAW

The Defendants' motion calls upon this Court to rule on the basis of the state law of Arkansas.   When evaluating issues of state law, federal courts "look to the final decisions of that state's highest court."[39]   In the absence of such a controlling decision, federal courts must make

---

[34] Id. at ¶¶ 64-65.

[35] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

[36] Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

[37] Bustos v. Martini Club Inc., 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted) (emphasis added).

[38] Iqbal, 556 U.S. at 679.

[39] Temple v. McCall, 720 F.3d 301, 307 (5th Cir. 2013) (citation omitted).

an Erie guess and determine, in their best judgment, how the supreme court of that state would resolve the issue if presented with the same case.[40]

With regard to the claim at issue in this case, there are three sources of relevant applicable law: (a) the Arkansas Constitution; (b) Nelson v. Berry Petroleum Company,[41] and (c) post-Nelson jurisprudence.

### 1.    The Arkansas Constitution: Illegal Exactions

The State of Arkansas long ago established the authority of all of its citizen-taxpayers to enter the litigation fray in order to protect the public fisc.  This right is based in equity and stems from "the theory that the taxpayers are the equitable owners of public funds, and that their liability to replenish the funds exhausted by the misapplication entitles them to relief against such misapplication."[42]  Article 16, § 13 of the Arkansas Constitution of 1874 ("§ 13") reads as follows:

> Any citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.[43]

With these few words, the Arkansas Constitution grants standing and authority to any Arkansas citizen who has contributed tax money to the general treasury to bring a class action claim on behalf of all Arkansas citizen-taxpayers to seek refund or reimbursement of funds improperly

---

[40] Id. (citations omitted).

[41] 242 Ark. 273, 413 S.W.2d 46 (1967).

[42] Samples v. Grady, 207 Ark. 724, 727, 182 S.W.2d 875, 877 (1944); Eddy v. Schuman, 206 Ark. 849, 177 S.W.2d 918, 920 (1944).

[43] Ark. Const. Art. 16, § 13.

disbursed from the State Treasury.[44]   The rest has been left to the Courts; the Supreme Court of Arkansas' jurisprudence establishes a usable threshold analysis for use in illegal exaction claims.

The Supreme Court of Arkansas has defined "illegal exaction" as "any exaction that is not authorized by law or is contrary to law."[45]   There are two distinct categories of illegal exaction cases.   First, there are "illegal tax" cases where a tax is challenged as illegal.   No tax or tax collection has been alleged by Bowerman, consequently, this Court will not further discuss this category of cases.   The second category of illegal exaction cases are the "public funds" cases, where the use of public funds is challenged as either "misapplied or illegally spent."[46]

The public funds cases are further divided into two sub-types: (a) those cases where expenditure of public funds is alleged to be illegal and (b) those where the expenditure allegedly is a misapplication of public funds.   Bowerman has not alleged that the expenditures under challenge were illegal *per se*, but that they were "misspent or misappropriated from the Treasury of the State of Arkansas" and, therefore, are "monies that must otherwise be replenished by the citizen-taxpayers of the State of Arkansas."[47]   Thus, a misapplication by a public official of funds arising from taxation constitutes an exaction from the tax payers and empowers any citizen to maintain a suit to prevent such misapplication of funds.[48]

---

[44] The Supreme Court of Arkansas has held that, "the only standing requirements we have imposed in public-funds cases are that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury."  Ghegan & Ghegan, Inc. v. Weiss, 338 Ark. 9, 16, 991 S.W.2d 536, 539 (1999) (citations omitted).  Bowerman has sufficiently pled both of these requirements. (Doc. 3, ¶ 1)

[45] Dockery v. Morgan, 2011 Ark. 94, 380 S.W.3d 377, 387 (2011), *reh'g denied* (Apr. 14, 2011) (*citing* Robinson v. Villines, 2009 Ark. 632, 362 S.W.3d 870, 874 (2009)).

[46] Nelson v. Berry Petroleum Co., 242 Ark. 273, 413 S.W.2d 46 (1967).

[47] Rec. Doc. 3, ¶ 13.

[48] Brewer v. Carter, 365 Ark. 531, 536, 231 S.W.3d 707, 709 (Ark. 2006).  Samples v. Grady, 207 Ark. 724, 727, 182 S.W.2d 875, 877 (1944) (*citing* Lee County v. Robertson, 66 Ark. 82, 48 S.W. 901; Grooms v. Bartlett, 123 Ark. 255, 185 S.W.282).

Thus, the elements of an illegal exaction "public funds" claim are:

- a disbursement of funds from the Arkansas State Treasury;

- the disbursement was wrongful in some way (*i.e.*, that it ought not have occurred);

- wrongful conduct by a defendant (either a public actor or a private actor), that led to the wrongful disbursement; and

- in the absence of relief, the wrongfully-disbursed funds will have to be replenished by the citizen-taxpayers of the state of Arkansas.

2.   ***Nelson v. Berry Petroleum Company***

In 1967, the Supreme Court of Arkansas issued its landmark opinion in <u>Nelson</u>, and provided guidance on the illegal exaction concept and how it works in the State of Arkansas.

Nelson, a citizen-taxpayer of Arkansas, uncovered an alleged years-long conspiracy to fix prices (and, thus, to not compete with each other) by a large number of companies that sold asphalt to the State of Arkansas Highway Department for use in the construction of highways.[49] Nelson also alleged that the defendants had provided asphalt of a lower grade than had been paid for by the State of Arkansas.[50]   Nelson alleged that the defendants unlawfully had received in excess of $3 Million in taxpayer funds as a result of this wrongful conduct and sought a refund of those funds into the State Treasury.[51]   The lower court granted demurrers filed by the defendants and dismissed the case.[52]   On appeal, the only issue was whether Nelson had stated a cause of action.[53]   The Supreme Court reversed the lower court and remanded the matter to the lower

---

[49] 242 Ark. at 274, 413 S.W.2d at 47.

[50] <u>Id.</u>

[51] <u>Id.</u>

[52] 242 Ark. at 275, 413 S.W.2d at 48.

[53] <u>Id.</u>

court.[54]

In discussing the defendants' primary challenge to Nelson's claims (*i.e.*, that there was no jurisdiction to hear the claims because Nelson was asserting federal antitrust claims, over which state courts do not have jurisdiction), the Court agreed that no jurisdiction exists in Arkansas state court to hear claims of exclusive federal jurisdiction, but rejected the defendants' premise that such claims had been asserted. "[W]e do not agree that the instant suit is simply an attempt to seek recovery under these federal acts. Instead, it appears to be an action instituted pursuant to Article XVI, Section 13 of the constitution of the State of Arkansas."[55]

The Court went on to describe illegal exactions. "'Illegal Exaction' under the Arkansas Constitution means both direct and indirect illegal exactions, thus comprehending any attempted invalid spending or expenditure by any government official."[56]   An illegal exaction is far more than the mere collection of unlawfully-levied taxes.  With little limitation, the jurisprudence suggests almost any misuse or mishandling of public funds may be challenged by a taxpayer action; even paying too much for cleaning public outhouses has been held  to be a basis for a taxpayer's right to relief.[57]  It would seem under Arkansas law, any arbitrary or unlawful action exacting taxes or tax revenues may be restrained and annulled by a taxpayer affected by such procedure.[58]  The Arkansas Courts infer the authority granted by § 13 is justified by the fact that the wrongful distribution of funds by the State Treasury, by necessity, means citizen taxpayers will be required to pay more taxes.

---

[54] 242 Ark. at 282, 413 S.W.2d at 51.

[55] 242 Ark. at 276, 413 S.W. 2d at 48.

[56] 242 Ark. at 277, 413 S.W. 2d at 49 (internal citations omitted).

[57] 242 Ark. at 277, 413 S.W. 2d at 49 (citing Dreyfus v. Boone, 88 Ark. 353, 114 S.W. 718).

[58] Id.  (citations omitted).

> There is eminent authority for holding, even in the absence of an express provision of the Constitution, such as referred to above, that a remedy is afforded in equity to taxpayers to prevent misapplication of public funds on the theory that the taxpayers are the equitable owners of public funds and that their liability to replenish the funds exhausted by the misapplication entitles them to relief against such misapplication.[59]

When looking at the relevant Arkansas jurisprudence, this Court notes the initial decision in Nelson was not an anomaly; the following year, Nelson was before the Supreme Court of Arkansas once again.[60]   The State of Arkansas had intervened and was looking for the Court's assistance in asserting control over the effort to recover funds from the defendants, and to force Nelson to delay until the State had finished its efforts.[61]   In its opinion refusing to consider the appeal and refusing to grant any type of equitable relief, the Court reiterated its position that Nelson was fully authorized to pursue his illegal exaction claims as he chose and exhibited no regret over the argued breadth of its earlier decision.

> It is not clear to us why appellee-plaintiff Nelson prefers a trial in a state court in view of the possible recovery of treble damages in the federal courts.  There is no allegation that the duly designated state officials are not pursuing the matter aggressively and in good faith.  Yet the courts cannot control the taxpayer's actions in this matter in the absence of statutory guidelines in this field . . .[62]

Thus, Nelson suggests *inter alia* that (a) citizen-taxpayers are permitted to sue private defendants for illegal exaction, and (b) "illegal" does not require an express prohibition of the distribution itself (Arkansas' actions in granting the asphalt contracts had been completely legal; the "illegal"

---

[59] Nelson, 242 Ark. at 278, 413 S.W.2d at 49 (citations omitted).

[60] State of Arkansas *ex rel* Purcell v. Nelson, 246 Ark. 210, 438 S.W.2d 33 (Ark. 1969).

[61] 246 Ark. at 213, 438 S.W.2d at 36-37.

[62] 246 Ark. at 218, 438 S.W.2d at 39.

aspect of these payments grew from the fact the Defendants were engaged in an undisclosed conspiracy to drive up asphalt prices).

### 3.  Post-*Nelson* Jurisprudence

This Court has read every opinion citing *Nelson* since it was issued, and has briefly reviewed a great many of the approximately 350 opinions issued by the Supreme Court of Arkansas that discuss illegal exaction.  This Court has found no repudiation of *Nelson*, no retrenchment by the Supreme Court of Arkansas, and no apparent narrowing of the Court's approach to the subject.[63]  However, neither has this Court located any true analogs to the facts and circumstances presented here, nor any decisions extending *Nelson* into the, heretofore, unexplored landscape urged by plaintiff, which possibly raise quite different policy determinations than *Nelson* and its progeny, raising the spectre of large, and likely significant social, political, and legal ramifications.  Were this Court to make its decision based solely upon the existing jurisprudence, it would be forced to attempt to read meaning into the silence of the Arkansas Courts as endorsing one path above another.  In so doing, this Court would be stepping onto very treacherous ground indeed.  However, this Court acknowledges *Nelson*'s continued vitality and would apply *Nelson*'s precepts on their own terms – for as far as they can take us.

### 4.  The Supreme Court of Arkansas should be heard.

First, the fact the Supreme Court of Arkansas has not, yet, considered the argued application of *Nelson* and the possible modern policy implications of applying the *Nelson* precepts to issues and fact comparable or analogous to those before this Court, makes this Court loathe to infuse the jurisprudential silence with meaning and determinative of an *Erie* guess,

---

[63] In fact, there is evidence to the contrary.  Bowerman attached to his Opposition brief a copy of the decision in *McAllister et al. v. Motels.com, L.P. et al.*, in which Judge McCallister in the Circuit Court of Saline County, Arkansas expressly declared that "*Nelson* remains good law." Rec. Doc. 114-2, ¶ 19.

loathe to infuse the jurisprudential silence with meaning and determinative of an <u>Erie</u> guess, without first offering the Supreme Court of Arkansas the opportunity to grant whatever insight and guidance it might deem advisable as to sailing in these, as of yet, unchartered waters. Among the policy concerns this Court envisions might be triggered by Bowerman's use of the illegal exaction doctrine within this procedural and factual context are:

- Unlike <u>Nelson</u>, in this matter the State Treasury made payments to third parties (not to the Defendants named in this action).  This fact raises serious questions as to the propriety, scope, and practical nature of a requested refund of the cost of all Actos purchased by the State on behalf of its citizens.

- Unlike <u>Nelson</u>, in this instance, no liability flows simply from proof of the alleged wrongful conduct by the Defendants.  Rather, liability could only flow from proof of causation of harm as to each recipient of the challenged medical services provided by the State of Arkansas.[64]  As a result, the instant illegal exaction case, as pled, will have a similar effect and perhaps quite similar character as, à *parens patriae* case.

- Unlike <u>Nelson</u>, expanding the illegal exactment right to a mass tort litigation has the potential to trigger substantial and perhaps, as of yet, not fully understood or appreciated negative repercussions for the State of Arkansas and its legal system and business communities; however, such mass tort litigation could, also, if capable of practical application within this context, possibly provide substantial funds to the state treasury.

---

[64] Although it is not at all clear from plaintiff's rather inartfully crafted pleading that the claims made are limited to only those Arkansas citizens who actually took Actos, and who actually developed bladder cancer, and whose bladder cancer was actually caused by having taken Actos – those remain questions of legal proof which in and of themselves add a patina of procedural complexity, perhaps, not heretofore considered.

- Unlike <u>Nelson</u>, Bowerman seeks remedies that have never before been granted (to this Court's knowledge) within the legal context of an illegal exaction claim. First, Bowerman seeks the refund of money spent providing "medical services" to individuals allegedly harmed by the Defendants' actions. Such a "refund" would effectively permit Bowerman to recover *damages* from the Defendants (rather than only a refund of funds expended by the state providing Actos to its citizens). It would, similarly, effectively impose *an indemnity* obligation on the Defendants (and, by extension, possibly all businesses that operate in the State of Arkansas), in which those businesses could be liable also, to the state, and, therefore, become legally obligated or at legal risk to ensure no negative impacts were felt by the State of Arkansas as a result of their operations within or with the State.  Second, Bowerman seeks to obtain money from the Defendants to create a "common fund" for the apparent purpose of paying for *future* medical costs allegedly resulting from the Defendants' actions.  This Court has not seen any instance in which the Supreme Court of Arkansas agreed to allow a plaintiff to seek compensation from defendants for future "illegal exactions," particularly, in such a factually indirect and distant context.

In short, the path Bowerman seems to travel could lead the state of Arkansas into policy choices which the Arkansas Courts, heretofore, has not considered and which could, and likely would, have grave consequence for not just the state's legal landscape, but also, its business community and its citizens.

These and other serious policy questions are of such a serious and far reaching character, that this Court welcomes any and all input the Supreme Court of Arkansas might wish to offer.

C.        **PLAINTIFFS' LEGAL THEORIES**

As will be discussed more thoroughly below, Bowerman has asserted sufficient facts to demonstrate he has the authority to assert a constitutional class action on behalf of the taxpayer-citizens of the State of Arkansas. However, that does not end the inquiry as it is not sufficient merely to assert this matter presents a "public funds" type of illegal exaction claim. Rather, Bowerman, also, is required to include sufficient allegations the payment of public funds was "illegal" in some way. Thus, Bowerman must plead a legal theory under which the actions of the Defendants were wrongful. Bowerman has not graced this Court with the benefit of his insight as to his actual legal theory; consequently, the Court has combed through his Amended Complaint in search of understanding. It would appear Bowerman has asserted factual allegations designed to support two legal theories:

- The State of Arkansas has a Medicaid program (or some other unidentified program, that reimburses medical providers for services and products provided to Arkansas citizens).

- Through this program, the State of Arkansas has made payments to the Defendants (again, factually questionable, as the state has not, it would appear, paid any money directly to any of the Actos Defendants) for the purchase of Actos® and Actos®-containing medications.

- Additionally, Actos® allegedly has caused side effects to Arkansas citizens that have cost the State of Arkansas additional medical costs due to additional treatment provided to its citizens. (Again, precious few factual allegations were included to construct this rather large and necessary factual bridge.)

- The Defendants knew, or should have known, that Actos® would cause these side effects.

- The Defendants not only did not disclose these potential side effects, but actively hid this information from public view.

- These actions constitute "illegal conduct" on the part of the Defendants in two particulars:

o  under a *product liability* theory of wrongful conduct, Bowerman alleges facts (albeit precious few) showing defective design, defective manufacture, and failure to warn; and

o  under an unfair trade practices/unfair competition theory, he has alleged facts (again, precious few) suggesting that misrepresentations on the part of the Defendants induced the State of Arkansas to spend millions of dollars on an overpriced, harmful drug.

- Had the Defendants complied with their "legal obligations" of disclosure about the true risks of Actos®, the State of Arkansas would not have purchased Actos® for its citizens and would not have been required to reimburse medical providers for the cost of treatment of side effects caused by Actos®.

- The Defendants caused the State of Arkansas to pay sums of money that it should never have paid, and would never have paid without the Defendants' refusal to disclose relevant information about the risks and side effects of Actos®.

- Therefore, the Defendants have caused illegal exactions from the State of Arkansas' Treasury.   Based upon these alleged illegal exactions, as best this Court can determine, Bowerman seeks three categories of compensatory relief:

(a)  reimbursement of the cost of Actos® and Actos®-containing medications (the "direct refund claim");

(b)  reimbursement of the cost of treating side effects caused by Actos® (the "damages" or "indemnity" claim); and

(c)  the creation of a common fund for the purpose of paying for future costs associated with treating the side effects caused by Actos® (plus the declaratory and injunctive relief that would be necessary to create a process by which the refunded money could be transferred to the State Treasury)

Thus, based upon this Court's reading of the Amended Complaint, it appears Bowerman has asserted two legal theories under which the Defendants' actions are alleged to have caused "illegal" exactions: (a) one grounded in tort and product liability; and (b) one grounded in tort and business theory of unfair trade practices and unfair competition.  Each of these theories of liability and associated remedies will be addressed separately.

1.    *Legal Theory:  Product Liability*

Arkansas law provides that a supplier of a product is subject to liability in damages for harm to a person or to property if:

(a)    The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product;

(b)    The produce was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and

(c)    the defective condition was a proximate cause of harm to a person or to property.[65]

The liability established by § 4-86-102(a) applies even when the party claiming harm did not obtain the product from, or enter into any contractual relation with, the supplier.[66]

Bowerman has included allegations of fact addressing each of these elements, thereby effectively articulating a theory of wrongful conduct on the part of the defendants.  Moreover, he has made allegations concerning the other elements of his illegal exaction claim: (a) the State of Arkansas paid funds out of its Treasury; (b) those funds would not have been distributed but for the Defendants' wrongful conduct; and (c) if no refund is made by the Defendants, the taxpayers of the State of Arkansas will have to replenish the Treasury with their tax dollars.

Were this Court to make an Erie guess, it would conclude that the jurisprudence of the Supreme Court of Arkansas would require certain aspects of the Motion to Dismiss Bowerman's claim be denied and certain aspects granted.  On the basis of Bowerman's product liability theory, the alleged wrongful conduct could, perhaps, suffice to state an illegal exaction claim for certain of Bowerman's claimed remedies when reviewed under the Rule 12(b)(6) Review.  Moreover, this Court, likely, would rule the claim, as pled, could enable Bowerman to pursue a

---

[65] A.C.A. § 4-86-102(a).

[66] A.C.A. § 4-86-102(b).

direct refund from the Defendants (saving for another day the questions of whether such a refund should extend solely to disgorgement of the Defendants' profits, as no monies were paid directly to the Actos defendants, or should extend to the total sum allegedly misappropriated from the State Treasury as a result of the Defendants' allegedly wrongful conduct, and, again, what proof would be required to reach that end).  However, this Court, also, likely would rule within this limited procedural inquiry that § 13 does not authorize Bowerman to seek from these Defendants a full indemnification for the State of Arkansas for the alleged consequence(s) that might have flowed from the purchase of pioglitazone-containing medications by the State for certain of its citizens as the right claimed does not embrace the remedy sought.  Similarly, this Court, likely, would rule that alleged future damages cannot and do not constitute an "illegal exaction" as contemplated by the Arkansas Constitution for a variety of reasons, including the fact that no expenditure would have yet been made from the Arkansas Treasury in that instance.  Therefore, this Court, likely, also, would dismiss Bowerman's request for the creation of a "common fund" to address anticipated future losses.

     *2.*     *Legal Theory: Unfair Trade Practices*

   Bowerman's Amended Complaint and opposition memorandum include allegations suggesting that he intends to assert a theory of unfair trade practices, or something  similar, as a basis for concluding that the Defendants' wrongful conduct caused the "illegal" exactions for which he seeks a remedy.   Bowerman's less-than-clear allegations and weak argument force both the Defendants and this Court to speculate as to his intentions and his legal theory; a regrettable situation, particularly within the procedural vehicle at hand.

   Consequently, assuming for these purposes only that Bowerman argues the full breadth and scope of his rather loose factual allegations, this Court notes the Defendants' brief in support

of their motion to dismiss contains legal argument and factual support for a finding that the alleged unfair trade practices cannot suffice to state an illegal exaction claim under the facts of this case and applicable Arkansas law. In response to this argument, Bowerman has maintained complete silence. A party's silence, when argument is necessary, is legally significant. The defendants, as movants have carried their burden to show they are due the relief requested; therefore, the burden would pass to plaintiff to carry his burden to meet that argument. Plaintiff has not done so. Consequently, as defendants, as movants, have carried their burden to establish they are due the relief argued and as plaintiff has abjectly failed to carry his burden to meet that argument and finding no error law inherent in movants argument, this Court, likely, would find defendant is due the relief requested on this point. Consequently, Defendants' Motion to Dismiss Bowerman's illegal exaction claim on the ground of alleged unfair trade practices, likely, would be granted.

## D.   **DEFENDANTS' ARGUMENTS**

The Defendants' primary argument to persuade the Court to rule in their favor in its entirety is the following: "To prevail [on an illegal exaction of public funds] claim, Plaintiff must establish that the use of State funds to pay for Actos® *was prohibited by some provision of Arkansas law.*"[67] If this statement were true, the Defendants' motion would likely be granted, because Bowerman has not demonstrated that there is any specific provision of law that prevented the State from purchasing pioglitazone-containing medications.[68]   However, the statement is supported only by a string cite to opinions that neither make this statement directly, allude to such a precept, or ground their rulings on such an understanding of Arkansas law.

---

[67] Memorandum in Support of Motion to Dismiss for Failure to State Claim (Rec. Doc. 98-1), at 2.

[68] To the contrary, there is a provision specifically permitting the State to purchase medications on behalf of its citizens. *See* A.C.A. § 19-5-306(10)(a)(viii).

Moreover, this legally unsupported statement of law is in direct conflict with <u>Nelson</u> (where all payments made by the State were expressly permitted by law, but those payments were alleged to have been rendered "illegal" by the Defendants' wrongful anti-trust actions).

The Defendants' attempt to persuade this Court to sidestep <u>Nelson</u> by developing a string cite of cases under which illegal exactions have been found to have occurred, and then simply concluding that this list of examples contains the entire universe of all possible examples of illegal exaction is wholly unpersuasive. The Defendants' argument and theory are unpersuasive; Defendants make no effort to reconcile <u>Nelson</u> (which, as noted above, directly contradicts the Defendants' stated legal theory and <u>Nelson</u> remains good law). Instead, Defendants seek to shunt <u>Nelson</u> aside by merely declaring the Supreme Court of Arkansas has distanced itself from <u>Nelson</u>'s "liberal" interpretation and analysis of the illegal exaction doctrine and thus, this Court should not embrace that doctrine within this factual and procedural context. Specifically, the Defendants argue that <u>Hodges v. Lamora</u>[69] evidences the abandonment of <u>Nelson</u> by the Supreme Court of Arkansas. However, <u>Hodges</u> involved a citizen-taxpayer's effort to enforce a criminal judgment ordering restitution by calling the debt an "illegal exaction."[70] The Supreme Court of Arkansas rejected this reading, indicating that:

> the failure to collect restitution for theft surely does not qualify as a misapplication of public funds for illegal exaction purposes. Again, criminal charges and collection of a debt owed to the county are matters that lie within the ambit of the prosecuting attorney, and the available recourse must be through that office. Hence, we agree with the Chancery Court that Hodges lacked standing to bring this claim.[71]

---

[69] 337 Ark. 470, 989 S.W.2d 530 (1999).

[70] 337 Ark. at 473, 989 S.W.2d at 531.

[71] <u>Id</u>. at 475.

Although Hodges clearly illustrates an example of the Arkansas State Court's declining to extend the concept of illegal exaction into a different and distinct arena, i.e. the criminal and, thus, might foreshadow a reticence to extend the doctrine into the mass tort arena, Hodges in no way stands for the broad, absolute legal proposition for which Defendants put it forth.  The facts and circumstances in Hodges in no way directly implicate any aspect of Nelson at play in this case. Similarly legally irrelevant is Dockery v. Morgan,[72] a case in which a citizen-taxpayer sought to obtain a refund into the State Treasury that had not been expended from the State Treasury:  the funds at issue had been generated through gas leases (not tax payments), and therefore, could not constitute an illegal exaction of taxes that would have to be replenished by the citizen-taxpayers of the State of Arkansas.[73]   Again, although, perhaps foreshadowing a reticence on behalf of the Arkansas Supreme Court to embrace recovery of funds not yet or actually exacted from the Treasury, Dockery, also, does not stand for the proposition Defendants argue.

After reviewing the jurisprudence and arguments presented by the Defendants, this Court could find no legal support for the argued contention that the Supreme Court of Arkansas, in fact, has reversed course and disavows Nelson.  Were this Court to make an Erie guess as to how the Supreme Court of Arkansas would view Defendants' argument, this Court would likely conclude the Arkansas Supreme Court, also, would find Defendants' argument, as presented, unpersuasive and would reject it as contrary to existing law.  However, this is not to say, this Court's best Erie guess would be that the Arkansas Supreme Court would, nonetheless, choose to embrace plaintiff's equally weak argument for an unprecedented expansion of the application of the illegal exaction doctrine.  Neither legal argument, as made, it would seem, addresses, perhaps,

---

[72] 2011 Ark. 94, 380 S.W.3d 377 (2011).

[73] Id. at 387.

the most problematic question at hand – whether the Arkansas Supreme Court would or would not, as a matter of policy, chose to expand the application of the illegal exaction doctrine, contract the application of the doctrine or distinguish the facts and nature of the present case from <u>Nelson</u>, altogether – a question the Arkansas Supreme Court is most uniquely suited to answer.

**E.      QUESTIONS CERTIFIED**

For the reasons discussed above, this Court, pursuant to Rule 6.8 of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas, certifies the following determinative questions of Arkansas law, subject to the Arkansas Supreme Court's power to reformulate them:

- Does Article 16, § 13 of the Arkansas Constitution provide Bowerman with a claim for illegal exaction under the facts and circumstances presented in this case?  If so, does that claim extend to both theories proffered by Bowerman (*i.e.*, product liability and unfair trade practices) and each of the remedies requested?

- Is <u>Nelson v. Berry Petroleum Co.</u>, 242 Ark. 273, 413 S.W.2d 46 (1967), still good law in Arkansas?  Does <u>Nelson v. Berry Petroleum Co.</u> embrace the expansive reading presented by Bowerman, or the more narrow reading argued by defendants, or is <u>Nelson</u> inapplicable to the facts and circumstances of this case?

This Memorandum and Certification Order shall be forwarded to the clerk of the Arkansas Supreme Court, 625 Marshall Street, 1320 Justice Building, Little Rock, AR  72201, by the clerk of the certifying court under its official seal.

This Court disclaims any intention or desire that the Supreme Court of Arkansas confine its reply to the precise form or scope of the questions certified.

THUS DONE AND SIGNED this _____ day of November, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE