RECEIVED

DEC - 4 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE: ACTOS (PIOGLITAZONE)
PRODUCTS LIABILITY LITIGATION

This Document Applies To:
*Allen, et. al. v. Takeda Pharmaceuticals
North America, Inc., et al.*
(Case No. 12-cv-00064)

MDL No. 6:11-md-2299

JUDGE DOHERTY

MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING: EXPERT TESTIMONY OF KRISTIN KUCSMA, M.A. RE: PUNITIVE DAMAGES METHODOLOGY

This multidistrict litigation arises from product liability claims against the manufacturer and marketer of Actos® and other drugs containing pioglitazone. Pending before this Court is the Defendants' Motion to Exclude Testimony of Plaintiffs' Expert, Kristin Kucsma, M.A., Regarding Punitive Damages,[1] in which the Defendants seek to exclude testimony by Ms. Kucsma regarding the methodology she recommends for calculating the Defendants' ability to pay punitive damages. For the reasons that follow, the Defendants' motion will be DENIED.

### PRELIMINARY STATEMENT

As a preliminary matter, this Court notes that the subject matter of Ms. Kucsma's report involves punitive damages, which the Plaintiffs are pursuing in this matter. The question of punitive damages will be addressed in two phases:

(a)   During the liability phase, the jury will be asked to decide whether or not the Plaintiffs are entitled to recover punitive damages. If they answer in the affirmative, then

(b)   A punitive damages phase of trial will follow the liability phase.

---

[1] Rec. Doc. 3470. This motion has been urged on behalf of all named defendants in this matter.

The opinion testimony at issue in this motion is relevant only to the possible punitive damages phase of trial. This Court has chosen to consider the motion at this time – even though there is no way to know, at this point, whether a punitive damages phase will occur – but wishes to clarify the following:

This Court has no opinion as to whether the trial of this matter will enter the punitive damages phase, nor does this Court have any expectation, one way or the other, as to whether punitive damages will be considered by the jury. This Court's decision to address the instant motion at this time is not intended to imply, nor to suggest, a belief that the ruling will be applied at trial. Instead, the decision to address the motion is made simply to ensure that as many disputes and issues as possible are resolved prior to trial, preferably in a manner that lends itself to a thoughtful, considered approach to decision-making.

Finally, this ruling presumes that the dispute will not arise until and unless:

(a)    a jury verdict in favor of the Plaintiffs has been issued;

(b)    the jury has decided that the Plaintiffs are entitled to recover punitive damages; and

(c)    Evidence as to the Defendants' financial condition has been presented to the jury.

If any of these conditions is not met, then the evidence that is the subject of the instant motion will not be relevant and, therefore, will be inadmissible.

## EVIDENCE UNDER CHALLENGE

Kristin K. Kucsma, M.A., is a forensic economist whose qualifications have not been challenged in this matter. She has submitted an expert report in two parts. The first part addresses "lifetime care costs for Terrence Allen," and the second part is entitled "Allen, Terrence – Punitive

Damages Methodology."[2]  Ms. Kucsma's report does not contain an opinion as to what amount of punitive damages the jury should award.

> We have prepared this report addressing the question of punitive damages in the matter referenced above.  We have not provided any calculations in this letter but, rather, have provided a detailed description of the methodology we would employ to provide such calculations.[3]

Moreover, her deposition testimony is clear (and it is undisputed by the parties) that she has made no calculation of the amount of punitive damages that should be awarded, nor has she familiarized herself with the factual underpinnings necessary to making such a calculation or offering such an opinion in this case, and plaintiffs assert nor does she intend to do so at trial.[4]

Instead of offering any opinion as to the proper *amount* of punitive damages the jury should award, Ms. Kucsma has provided a report that describes *the methodology* by which economists determine how large a payment a company can make without significantly interrupting its business operations.[5] The report describes the type of financial documents that could be relevant to the jury's consideration of punitive damages,[6] and proceeds to a discussion of the two-step process that economists use to evaluate financial information and to determine whether a company has the wherewithal to make a large payout of whatever nature.[7]  Finally, Ms. Kucsma explains how

---

[2] Defendants' Exhibit C8 [Rec. Doc. 3472].  All subsequent references to Ms. Kucsma's report will be directed to the second part discussing punitive damages methodology.

[3] *Id.* at 1.

[4] Defendants' Exhibit B6, at 51.

[5] *Id.* at 58.

[6] Defendants' Exhibit C8 at 1.

[7] *Id.* at 1-2.

economists use financial information to determine whether or not a company will be impacted by the obligation to make a large payment.[8]

In short, Ms. Kucsma uses her experience in the banking industry to identify the economic factors that she opines should be considered in determining a company's ability to pay,[9] and to describe the methodology that an economist could use in determining a company's ability to pay any large outlay of funds (including punitive damages).[10] Ms. Kucsma's testimony would offer the jury assistance with *its process* of considering punitive damages, but does not offer an opinion as to the *proper outcome* or end result of its deliberations. The Plaintiffs have, also, indicated they intend to have Ms. Kucsma's testimony available to use in rebuttal, in the event the Defendants present evidence at trial suggesting that they might be unable to satisfy a large punitive damages award.

## ANALYSIS

The Defendants have not challenged the substance of Ms. Kucsma's opinion, *i.e.*, that the "ability to pay" analysis used by financial institutions provides an appropriate methodology for determining whether a particular punitive damage judgment would imperil the continued existence of a company. The only challenges to Ms. Kucsma's testimony presented by the Defendants are: (a) the alleged lack of a foundation to permit any opinion "regarding punitive damages," and (b) the admissibility of testimony about the methodology she recommends.

---

[8] *Id.* at 2.

[9] Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Kristin Kucsma, M.A. Regarding Punitive Damages ["Opposition"] [Rec. Doc. 3609], at 2.

[10] *Id.*

## I.  Applicable Law

Because the evidence at issue in this motion will be proffered by the Plaintiffs, they bear the ultimate burden of demonstrating that it is admissible at trial.  The Federal Rules of Evidence establish that relevant evidence is admissible, while irrelevant evidence is not admissible.[11] Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and if the fact being proven or disproven is of consequence in determining the action.[12]

With regard to the question under consideration in this motion – punitive damages – the substantive law of New York establishes that a defendant's financial condition, together with the possible impact on the defendant of a punitive damages award, may be considered by a jury and, therefore, are "of consequence" (as required by Rule 401).  Specifically, New York law permits a jury contemplating the award of punitive damages to "consider the Defendant's . . . financial condition and the impact your punitive damages award will have on [the Defendant]."[13]  Moreover, the relevance of financial information about a defendant for a jury considering a punitive damages award has also been recognized in long-established New York jurisprudence.[14]  Thus, New York law makes clear that, if the trial of this matter were to proceed to a punitive damages phase, evidence of the Defendants' financial condition and of the impact of any potential punitive damages award on the Defendants will become relevant to the jury's determinations.  If the trial of this matter were to

---

[11] F.R.E. 402.

[12] F.R.E. 401.

[13] New York Pattern Jury Instruction Civil 2:278 (3d. Ed. 2013).

[14] *Rupert v. Sellers*, 48 A.D.2d 265, 368 N.Y.S.2d 904 (4th Dept. 1975), *citing Gierman v. Toman*, 77 N.J.Super. 18, 24-25, 185 A.2d 241, 245 (Sup. Ct. 1962).

proceed to the punitive damages phase, therefore, this Court expects both the Plaintiffs and the Defendants will be presenting evidence as to the Defendants' financial condition, within the confines and limits of applicable New York law.

The specific evidence at issue in this motion consists of opinion testimony directed at assisting the jury in their process of evaluating and using relevant financial information. Therefore, the Plaintiffs bear the ultimate burden of demonstrating that – in addition to the fundamentals of relevance and admissibility described above – the proffered evidence complies with the requirements of Rule 702 of the Federal Rules of Evidence.

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.[15]

Federal jurisprudence clearly establishes that this Court has a gatekeeping role with regard to expert opinion testimony, requiring that such evidence meet the requirements of both reliability and relevance.[16]

---

[15] F.R.E. 702.

[16] See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Moore v. Ashland Chemical, Inc., 151 F.3d 269, 275 (5th Cir. 1998) (en banc).

## II.   The Defendants' First Argument: Punitive Damages

Despite the fact that Ms. Kucsma and the Plaintiffs have made clear they do not intend to submit opinion testimony to the jury with Ms. Kucsma *as to the amount of punitive damages the jury should award*, the Defendants, nonetheless, seek an order of this Court precluding Ms. Kucsma from testifying "regarding punitive damages" at the trial of this matter.  There is, however, no indication in any of the briefing submitted to this Court, nor in the exhibits referenced in those briefs, that the Plaintiffs intend to present opinion testimony by Ms. Kucsma "regarding punitive damages," if that term is argued to encompass an opinion as *to an/the amount of punitive damages to be awarded*. To the contrary, Ms. Kucsma has given no indication she proposes, intends, or otherwise anticipates conducting any calculations of an amount or amounts of proposed punitive damages, opining to the jury about an amount to be awarded as punitive damages, or otherwise testifying "regarding punitive damages"[17] as that term might encompass an opinion as to an actual amount, rather than as to a process to aid the jury in its determination as to an amount, if any.

The Defendants' effort to exclude testimony that the Plaintiffs, through Ms. Kucsma, have asserted they do not intend to proffer, is ill founded and that aspect of their motion is DENIED.

## III.   The Defendants' Alternative Argument: Methodology

In their original brief in support of the instant motion, the Defendants' effort was directed solely to challenging Ms. Kucsma's ability to testify "regarding punitive damages," as suggested above. The Plaintiffs, in their Opposition, demonstrated they have no intention of presenting opinion testimony by Ms. Kucsma "regarding punitive damages," as suggested above.   In reply, the Defendants have now shifted their challenge to attack *the methodology* used by Ms. Kucsma, and

---

[17] Opposition at 2.

present a mix of seemingly unrelated complaints, many consisting of one sentence alone.  Out of an abundance of caution, each is addressed separately.

### A.   Confusing the Issues, Misleading the Jury, and Unfairly Prejudicing the Defendants

The Defendants first argue Ms. Kucsma's testimony will confuse the issues, mislead the jury, and unfairly prejudice Defendants.[18]  The Defendants have not described the way, if any, in which Ms. Kucsma's anticipated testimony would result in any of the three argued outcomes.  Moreover, this Court finds that presenting the jury with guidance as to how financial institutions might go about making judgments that are very similar to the one the jury might be asked to make, has the potential to assist the jury in understanding the evidence which likely will be presented.  These objections are overruled, and this portion of the motion is DENIED.

### B.   Imprecise and complicated methodology

Perhaps, the most significant of the Defendants' complaints concerns the allegation that Ms. Kucsma's methodology is so "imprecise" and "complicated" that the jury cannot possibly be expected to engage in such an analysis.[19]  Consequently, defendants urge the Court to exclude such evidence as irrelevant and unreliable.

In making this argument, the Defendants rely heavily upon select testimony presented by Ms. Kucsma during her deposition.  This Court has reviewed this entire section of the deposition and finds the argued portions do not demonstrate, either, that Ms. Kucsma's methodology is imprecise, nor that it is unnecessarily complicated.  The method described – while clearly not intended to work

---

[18] Reply in Support of Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Kristin Kucsma, M.A., Regarding Punitive Damages ["Reply"] [Rec. Doc. 3668], at 2.

[19] *Id.* at 2.

as a mathematical formula – is not beyond the reach of the normal levels of sophistication that jurors can be expected to have.

More importantly, this Court finds the deposition testimony referenced by the Defendants in their reply brief focused on *Ms. Kucsma's* use of the methodology *in her regular work*[20] rather than a the methodology *the jury might apply* while considering a punitive damages award.[21]  There is a not insignificant distinction between the two situations – Ms. Kucsma normally has an open-ended ability to investigate a company's financial condition and can seek out additional information she might wish to consider and can engage in as sophisticated an inquiry and process as she might choose, whereas the jury will be the passive recipient of financial information about the Defendants and will not be disserved by receiving learned suggestions as to how to deal with that information within the confines of the instructions given by the Court.  Consequently, the details of how the methodology works in Ms. Kucsma's office, is not, necessarily, synonymous with how the jury might apply a suggested method to a limited universe of information with which it will be presented at trial.  The jury's dilemma (*i.e.*, what to do with certain financial information, how to consider it, and how to apply it to the task at hand) is the type Ms. Kucsma's testimony, and perhaps in particular, the "ability to pay" methodology, might be designed to aid in resolution; Ms. Kucsma's testimony about the methodology used by banks and other financial institutions to determine "what payout a company could undertake without significantly interrupting its business operations"[22] is of

---

[20] Reply in Support of Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Kristin Kucsma, M.A., Regarding Punitive Damages ["Reply"] [Rec. Doc. 3668], at 3 (discussions of the ways that Ms. Kucsma applies (and has applied) the methodology in her work).

[21] This Court has reviewed the entire portion of the deposition discussing this issue and did not find any questions directed toward *the jury's possible use* of the "ability to pay" methodology, nor how Ms. Kucsma might advise the jury to apply the methodology at trial.

[22] Defendants' Exhibit B6 (Deposition of Kristin Kucsma) at 58.

-9-

a sufficiently similar and relevant nature as to provide some assistance to the jury in *understanding the evidence* presented. Consequently, the Defendants' objections are overruled; and thus, that portion of the motion is DENIED.

### C.    Jurors are not Economists

The Defendants suggest that Ms. Kucsma should not be permitted to testify as to her proposed methodology because the jurors (expected to be non-economists, on the whole) cannot possibly understand and apply the methodology, nor understand the terms Ms. Kucsma uses while discussing the methodology, nor understand the concepts underpinning the economic analysis at issue.[23] As noted above, this Court has reviewed the deposition testimony on this issue and finds the testimony is no more esoteric than typical economists' opinion testimony, and perhaps, even, somewhat less complex than some of the scientific testimony the jury will be expected to consider during the trial of this matter. This Court finds the Defendants' concern is misplaced; this objection is overruled and thus, that portion of defendants' motion is DENIED.

### D.    Rule 702(c)

Expert witness testimony must result from "reliable principles and methods" in order to be admissible.[24] The Defendants argue that Ms. Kucsma's opinions do not result from such reliable principles and methods. In making this argument, the Defendants once again reprise the "regarding punitive damages" argument.

As this Court understands Ms. Kucsma's report and deposition, she is a forensic economist who was asked to provide advice and guidance to the jury on how to consider and analyze the

---

[23] Reply, at 4.

[24] F.R.E. 702(c).

financial information they are expected to receive should the case move into a punitive damages phase. She developed an opinion that the "ability to pay" methodology used by financial institutions could provide an appropriate *process* for the jury to use in their task of determining a proper amount of punitive damages, if any, to award. There is neither evidence nor argument suggesting that she did not use reliable principles and methods in reaching her opinion that the "ability to pay" methodology could provide useful assistance to the jury in understanding the evidence, nor does this Court perceive any difficulty with the process by which Ms. Kucsma reached her conclusion.

In the absence of any reason to believe the principles and methods used by Ms. Kucsma were unreliable or otherwise subject to challenge, the Defendants' objection is overruled and thus, that portion of defendants' motion is DENIED.

**E.     Rule 702(d)**

With their final objection, the Defendants return to another aspect of their "regarding punitive damages" argument. Specifically, F.R.E. 702(d) requires that an expert must have "applied the principles and methods to the facts of the case." Once again, the Defendants' argument is directed to opinion testimony plaintiffs assert Ms. Kucsma has no intention of presenting, rather than to the opinions that she actually has put forth. When presented with the question of how to guide the jury in its consideration of the Defendants' financial information, she used her knowledge and experience to recommend that the jury use the "ability to pay" analysis commonly used by financial institutions in evaluating whether companies are able to make payouts. This opinion has not been shown to be objectionable in any specific fashion, rather, has been shown to be well-founded in Ms. Kucsma's education, knowledge and experience, and the Defendants have not provided this Court with any

basis for concluding otherwise as to either inquiry.  The objection is overruled and thus, this portion of defendants' motion is DENIED.

Because the anticipated opinion testimony of Ms. Kucsma Plaintiffs assert they will proffer is not of the type argued by defendants, and as defendants have presented no evidence or persuasive argument to support their objections, the Defendants' arguments challenging the admissibility of testimony concerning the methodology described in Ms. Kucsma's report are overruled and thus, this portion of defendants' motion is DENIED.

**CONCLUSION**

For the foregoing reasons, this Court finds defendants have failed to present evidence or persuasive argument to establish they are due the relief requested and plaintiffs have met their burden in response to defendants' argument and evidence demonstrating the admissibility, pursuant to Rule 702 of the Federal Rules of Evidence, of the testimony of Kristin Kucsma concerning the "ability to pay" methodology of financial analysis.  Therefore, the Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Kristin Kucsma, M.A. Regarding Punitive Damages [Rec. Doc. 3470] shall be DENIED.

THUS DONE AND SIGNED this ___4___ day of December, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-12-