Case 6:11-md-02299-RFD-PJH Document 3817 Filed 01/06/14 Page 1 of 15 PageID #: 107092

RECEIVED
JAN 06 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE: ACTOS (PIOGLITAZONE)      MDL No. 6:11-md-2299
PRODUCTS LIABILITY LITIGATION

JUDGE DOHERTY

This Document Applies To:
*Allen, et. al. v. Takeda Pharmaceuticals
North America, Inc., et al.*
(Case No. 12-cv-00064)

MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

This multidistrict litigation arises from product liability claims against the manufacturer and marketer of ACTOS® and other drugs containing pioglitazone. Before the Court is the Motion for Summary Judgment [Doc. 3415] filed by defendants Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc., Takeda Pharmaceuticals International, Inc., Takeda Pharmaceuticals LLC, Takeda Development Center Americas, Inc., Takeda California, Inc. ("collectively, "Takeda"), and Eli Lilly and Company ("Lilly") (collectively with Takeda, "defendants"). The crux of the defendants' motion is three-fold: (1) defendants[1] argue they are entitled to summary judgment on *all* claims because plaintiffs have no admissible evidence of specific causation[;]" (2) defendants argue they are entitled to summary judgment on the plaintiffs' unfair business practices claim under New York General Business Law Section 349 because plaintiffs have no evidence that the plaintiff Terrence Allen viewed any materials provided by "defendants" prior to taking ACTOS, and therefore cannot demonstrate a causal relationship between any allegedly deceptive conduct on the part of the "defendants" and Mr. Allen's use of ACTOS; and (3) defendant Lilly argues it is "entitled to summary judgment on all claims" because plaintiffs

---

[1] It appears certain aspects of the instant motion are urged by all defendants, while other aspects of the motion are urged only by defendant Eli Lilly. The Court has attempted to indicate which defendants move for which specific relief where possible, however, again cautions defendants as to their broad brush approach used.

cannot establish that (a) Lilly manufactured, sold or distributed the ACTOS Mr. Allen ingested; (b) Lilly was responsible for the labeling of ACTOS; or (c) Mr. Allen or his prescribing physicians relied on any representations Lilly made regarding ACTOS.

Although the foregoing are the only grounds asserted in support of dismissal in the defendants' <u>motion</u> for summary judgment, in their <u>memorandum in support</u> of the motion, the defendants also argue for dismissal of the plaintiffs'[2] "derivative claim for loss of consortium."

The plaintiffs oppose the motion [Doc. 3545], and the defendants have filed a Reply [Doc. 3633]. For the following reasons, defendants' motion is DENIED in its entirety.

## I. Factual and Procedural Background

For purposes of the instant motion, it is undisputed that the United States Food and Drug Administration ("FDA") approved Takeda's New Drug Application ("NDA") for ACTOS® (pioglitazone Hcl), a prescription medication for the treatment of type 2 diabetes, on July 15, 1999. Takeda holds the NDA for ACTOS. On December 14, 1998, Takeda and Lilly entered into an agreement (the "Co-Promotion Agreement") giving Lilly the exclusive right to co-promote ACTOS with Takeda in the United States. In 1999, Takeda and Lilly began marketing ACTOS for prescription by licensed physicians in the United States, in accordance with its FDA-approved labeling.

The role Lilly played in the marketing and distribution of ACTOS is a hotly-contested aspect of the instant motion and, indeed, the entire case, however it is undisputed the term of the agreement

---

[2] Loose language in the defendants' briefing makes it unclear whether the loss of consortium claim is brought on behalf of all plaintiffs or on behalf of Mr. Allen only and this Court will not belabor the obvious point of whether a request for relief is proper when not raised in the motion but is raised only in argument within the memorandum in support.

between Takeda and Lilly was to be for a period of seven years following the "ACTOS Launch Date." The parties do not dispute that Lilly's *active* promotion of ACTOS ended in March 2006. However, the Co-Promotion Agreement provides for a three-year period following the end of the Agreement during which Lilly continued to be paid a residual fee based upon the anticipated success of its marketing and/or distribution efforts, as follows:

> In recognition that: . . . Lilly's efforts . . . will be important in maximizing the commercial potential of ACTOS . . . and ACTOS will, in all probability, continue to be a commercial success even after Lilly is no longer participating in the promotion . . . Takeda shall pay Lilly a residual co-promotion fee on sales of ACTOS in the Territory [US] . . . for an additional 3 years following the expiration of the term of the Agreement in the following percentages: residual year 1 = 50%, residual year 2 = 35% and residual year 3 = 15%.[3]

The "last call" notes produced by the defendants indicate the last time a Lilly sales representative met with Dr. Reilly, plaintiff's treating physician, was on September 30, 2004, and the last time a Lilly sales representative met with Dr. Lamb, also plaintiff's treating physician, was on May 25, 2004. Plaintiff Terrence Allen began taking ACTOS pursuant to a prescription in June 2006. He took the drug until April 2011 and was diagnosed with bladder cancer in January 2011. It is possible, but disputed, Mr. Allen, also, took ACTOS samples beginning in April 2006. It is, however, undisputed Mr. Allens's prescribers, Dr. Reilly and Dr. Lamb, received samples of ACTOS during the time period that both Takeda and Lilly sales representatives made calls on Drs. Reilly and Lamb.

## II.   Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and

---

[3] *See* Co-Promotion Agreement, attached as Exhibit 21 to plaintiffs' opposition brief, Doc. 3545, at §2.06.

3

(b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). In general, as summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of

4

controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990)(internal quotations and citations omitted). The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

The usual summary judgment burden of proof is altered in the case of a qualified immunity

5

defense, as follows:

> When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, the plaintiff bears the burden of rebutting that defense. In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is evidence to sustain a finding that the defendant's complained of conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and the defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301–302 (5th Cir.2004) (emphasis added) (citations and quotations omitted).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "the court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir.2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." *Id.* In evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

### III. Legal Analysis

**1. The motion of all defendants to dismiss all claims on grounds the plaintiffs have no admissible evidence of specific causation**

Defendants argue they are entitled to a dismissal of all of the plaintiffs' claims against all

6

defendants on grounds the plaintiffs cannot establish a triable issue on causation. In support of their argument, the defendants rely on a previously-advanced argument that the plaintiffs' only retained causation expert, Dr. Scott Delacroix, failed to perform a reliable differential diagnosis to support his opinion that ACTOS caused plaintiff Terrence Allen's bladder cancer. Consequently, the defendants argue Dr. Delacroix's opinion should be excluded at trial, and that without such opinion, the plaintiffs cannot prove the essential element of causation.

After consideration of the arguments of the parties on the issue of the admissibility of Dr. Delacroix's opinion, this Court has largely rejected the argument of the defendants, denying the defendants' request for an order precluding Dr. Delacroix from testifying as to both his general and specific causation opinions. *See* Memorandum Ruling: Dr. Scott Delacroix, Urologic Oncologist," Doc. 3779.

Because the Court has denied the defendants' motion to preclude Dr. Delacroix from testifying as to his general and specific causation opinions, the defendants' motion to dismiss all of the plaintiffs' claims on grounds they cannot prove causation at trial is not persuasive. Considering the foregoing, defendants' motion to dismiss all claims on this ground is DENIED.

   2.   **The motion of all defendants to dismiss plaintiffs' unfair business practices claim under New York General Business Law Section 349**

In their motion, defendants move to dismiss plaintiff's unfair business practices claim under New York General Business Law Section 349 on grounds plaintiffs have no evidence Mr. Allen viewed any materials provided by defendants prior to taking ACTOS, and therefore cannot demonstrate a causal relationship between any allegedly deceptive conduct on the part of the defendants and Mr. Allen's use of ACTOS.

7

Since the filing of the instant motion, however, on November 19, 2013, this Court was notified, via the Special Masters, of plaintiffs' intention to no longer pursue their claims under New York General Business Law §349.[4] Considering the foregoing, the portion of the instant motion seeking to dismiss plaintiffs' New York General Business Law Section 349 business claims is DENIED AS MOOT.

### 3. Lilly's motion for summary judgment

Lilly moves for summary judgment on three grounds: (a) Plaintiffs cannot establish Lilly manufactured, sold or distributed the ACTOS Mr. Allen ingested; (b) plaintiffs cannot establish Lilly was responsible for the labeling of ACTOS; and/or (c) plaintiffs cannot establish Mr. Allen or his prescribing physicians relied on any representations Lilly made regarding ACTOS. Because all of the foregoing arguments present genuine issues of material fact that must be decided by a jury, the instant motion to dismiss the plaintiffs claims against Lilly must be denied.

### (a) Plaintiffs cannot establish that Lilly manufactured, sold or distributed the ACTOS Mr. Allen ingested.

Defendants argue they are entitled to summary judgment on plaintiffs' claims against them on grounds plaintiffs cannot establish Lilly manufactured, sold, or distributed the ACTOS Mr. Allen ingested. Defendants cite to no jurisprudence showing a requirement under New York law that a plaintiff prove that a defendant manufactured, sold, or distributed the actual drug ingested by the plaintiff, and the caselaw demonstrates that potential liability on the part of a drug distributor is not so narrowly construed. Indeed, in *Brumbaugh v. CEJJ, Inc.*, 152 A.D.2d 69, 70-71 (N.Y. App. Div.

---

[4] The Court was unable to find any document in the record officially dismissing these claims, however numerous documents outside the record confirm this fact, as well as the fact that the latest outline of claims filed by the plaintiffs do not include the §349 claims. This procedural matter will need to be clarified prior to or at the pre-trial conference.

8

3d Dep't 1989), the court stated:

> Since *Codling v. Paglia*, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622, eliminated the privity requirement in strict products liability actions brought against manufacturers, ***the pool of potential defendants has been judicially expanded to include distributors, retailers, processors of materials and makers of component parts, or essentially to any one responsible for placing the defective product in the marketplace.*** In *Mead v. Warner Pruyn Div., Finch Pruyn Sales*, 57 A.D.2d 340, 394 N.Y.S.2d 483, this court identified some policy considerations for expanding this pool, namely, when imposing liability would provide injured consumers with a greater opportunity to commence an action against the party responsible, fix liability on one who is in a position to exert pressure on the manufacturer to improve the safety of the product, or ensure that the burden of accidental injuries occasioned by products would be treated as a cost of production by placing liability upon those who market them. It is also not an insignificant concern that these potential litigants in the distributive chain have an opportunity through contribution or indemnification to recover from the manufacturer.

(emphasis added) (internal citations omitted).

Lilly seeks dismissal of the claims against it by arguing it "did not manufacture, sell, or distribute the ACTOS Mr. Allen took to treat this diabetes." However, the plaintiffs do not argue Lilly is the *manufacturer* of ACTOS. Rather, the plaintiffs argue Lilly has potential liability as the *distributor* and "*co-promotor*" of the drug. And while Lilly attempts to downplay its actual role in distributing and marketing ACTOS, the plaintiffs set forth evidence showing the issue of Lilly's role in the "distributive chain" is fraught with disputed facts and wholly inappropriate for summary judgment at this stage. Included in the evidence submitted by the plaintiffs to counter the instant motion on this point is the following:

- Lilly was a central participant in the ACTOS marketing campaign, and played a significant role in "physician detailing;"
- Lilly participated in the broader marketing project of generating ostensibly scientific materials about ACTOS, which would appear to be neutral and independent, but were actually designed to persuade doctors to prescribe ACTOS;

9

- Lilly participated in clinical studies and the preparation of publications, regulatory issues (including the exchange of information related to "Adverse Events" and post-marketing surveillance), and overseeing customer/medical services;

- Takeda and Lilly jointly flooded the medical community with promotional messages about ACTOS designed to control the portrayal of ACTOS and to influence what doctors believed about diabetes treatment, cardiovascular disease prevention, and the drug's potential to cause potential bladder cancer;

- Lilly was substantially involved in all of the ACTOS promotional activities;

- Lilly had substantial participation in tracking so-called "adverse events" and in responding to specific concerns about bladder cancer. Plaintiffs pointedly argue Lilly ignored or suppressed information about bladder cancer and worked with Takeda to keep that information from becoming known in the medical community.

Thus, while the defendants' argument seems focused more on who should share potential liability *among the defendants* for potential damage done to Mr. Allen -- a circumstance the *Brumbaugh* case recognizes when it references contribution and indemnification among those in the "distributive chain" – *from Mr. Allen's standpoint*, liability is alleged against Lilly as the distributor and "co-promotor" of ACTOS. And while defendants argue "[I]t is not enough for Plaintiffs to show that Lilly played a role in placing ACTOS into the stream of commerce, in general, but that they must instead demonstrate that Lilly manufactured, sold or distributed the ACTOS Mr. Allen actually ingested," the foregoing premise, is, simply, wrong. New York law is clear that to the extent Lilly played a role in placing ACTOS into the marketplace, Lilly can bear some liability to the plaintiffs. How big a role Lilly played – and its potential liability to this particular plaintiff – is a question for the jury.

Notwithstanding the foregoing, under New York law, the potential liability of a distributor is not unlimited. Indeed, in *Brumbaugh*, the court states:

> ***Liability is not to be imposed, however, upon a party whose role in placing the***

> ***defective product in the stream of commerce is so peripheral to the manufacture and marketing of the product that it would not further these policy considerations.*** For example, no liability attaches where one performs a service rather than makes or sells a product. Thus, repairmen are not to be held accountable in strict products liability when they repair an already marketed product, and a manufacturers' trade association, which reviews and certifies pools and related equipment, is not liable for accidents resulting from the products it certifies. These authorities indicate that liability should be imposed only where the defendant actively ushers a product into the initial market.

152 A.D.2d at 71 (emphasis added) (internal citations omitted).

However, in the instant case, plaintiffs argue Lilly's role in the distributive chain was far from "peripheral" and have put forth evidence in support of their argument. Thus, there are clearly issues of disputed facts regarding the role Lilly played in the distributive chain, and this Court cannot find at this juncture that there can be no liability on the part of Lilly based upon the facts presented. For these reasons, summary judgment is DENIED on this aspect of Lilly's motion.

### (b) Plaintiffs cannot establish Lilly was responsible for the labeling of ACTOS.

Lilly further argues it can have no liability because it played no role in the labeling of ACTOS. However, the foregoing is also disputed by the plaintiffs, who set forth evidence that Lilly "had input into the label and significant involvement in discussions with [the] FDA" concerning labeling. In support of this argument, Lilly points to Section 2.01 of the Co-Promotion Agreement, which states:

> Finally, during the time period set forth in Section 2.08, below, Takeda shall take all steps necessary to ensure that both Takeda's and Lilly's names and/or logos appeal in equal prominence on the product, sample packages, product label associated with the ACTOS co-promotion product as well as any promotional material associated with such product . . .[5]

Considering the foregoing, it appears it was certainly the intention of both ACTOS and Lilly

---

[5] *See* Co-Promotion Agreement, attached as Exhibit 21 to plaintiffs' opposition brief, Doc. 3545, at §2.01.

11

that Lilly was to be prominently featured on the ACTOS label, sufficiently rebutting the argument of the defendants that Lilly had no involvement whatsoever in the labeling of the drug.

Additionally, plaintiffs argue persuasively that under FDA regulations, "brochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs [and a myriad of other marketing and/or distribution devices]" . . . "which are disseminated by or on behalf of its manufacturer, packer or distributor," are all considered labeling. *See* 21 CFR 202.1(I)(2).[6] Because the plaintiffs argue Lilly had extensive input into all of the foregoing materials -- considered "labeling" by the FDA – summary judgment in Lilly' favor on this point would be inappropriate.

Considering the foregoing, there are genuine issues of material fact concerning Lilly's role in the labeling of ACTOS, which gives rise to the issue of whether Lilly was in a position to warn about the dangers of ACTOS and failed to do so. Consequently, plaintiffs' claims cannot be dismissed on this ground.

### c) Plaintiffs cannot establish Mr. Allen or his prescribing physicians relied on any representations Lilly made regarding ACTOS.

Defendants argue plaintiffs cannot establish Mr. Allen or his prescribing physicians relied on any representations Lilly made regarding ACTOS. This argument is factually disputed by the plaintiffs. Plaintiffs contend Lilly representatives visited Dr. Reilly's office at least 97 times

---

[6] 21 CFR §202.1(I)(2) states:

> (2) Brochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound recordings, exhibits, literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug and references published (for example, the "Physicians Desk Reference") for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer, packer, or distributor of the drug and which are disseminated by or on behalf of its manufacturer, packer, or distributor *are hereby determined to be labeling* as defined in section 201(m) of the act.

between 1999 and 2004, leaving behind brochures and package inserts, and on at least 33 occasions, samples of ACTOS. On at least five separate dates from 2001 to 2001, plaintiffs argue Lilly representatives spoke with Dr. Reilly and discussed "patient profiles," "metformin failures," and reducing HbA1c. Plaintiffs contend Lilly's visits to Dr. Reilly unquestionably affected his prescribing of ACTOS to his patients.

Plaintiffs, also, factually dispute the somewhat specious argument that it cannot be proven that the samples Dr. Reilly gave to Mr. Allen came from Lilly. The plaintiffs argue it is undisputed Lilly provided samples to Dr. Reilly, and Dr. Reilly provided samples to Mr. Allen. Plaintiffs further point out ACTOS has a shelf life of three years, so that samples distributed by Lilly in 2004 could well have been given out by Dr. Reilly in early 2006 and to Mr. Allen specifically.

Considering the foregoing, there are disputed facts concerning whether Mr. Allen or his prescribing physicians relied on any representations Lilly made regarding ACTOS, and summary judgment on this point would be inappropriate.

### (d) "Joint Enterprise" and "Concerted Action"

In response to Lilly's motion for summary judgment, the plaintiffs argue they raise a triable issue of fact that Lilly and Takeda exercised equal control under the Co-Promotion Agreement sufficient to create a joint enterprise, and/or that Lilly may be liable under a "concerted action" theory. This Court finds the issues of "joint enterprise" and "concerted action" are intertwined with the issue of what role Lilly played in the distributive chain, an issue this Court has already concluded is fraught with disputed facts. Considering the foregoing, the Court concludes there are genuine issues of material fact regarding whether Lilly can be liable under either of the foregoing theories, and therefore, summary judgment is inappropriate on these points at this time.

13

### (e) The effective term of the Co-Promotion Agreement between Takeda and Lilly

To the extent Lily is arguing its role in the marketing of ACTOS could not have caused Mr. Allen's injuries because the Co-Promotion Agreement between Takeda and Lily ended in March 2006,[7] before Mr. Allen started taking ACTOS,[8] and because Lilly claims it stopped visiting plaintiffs' doctors even earlier, this Court concludes there are genuine issues of material fact concerning the length of time Lilly played a role in the distributive chain of ACTOS and how long the efforts of Lilly may have been effective in convincing physicians to prescribe the drug. Plaintiffs argue the effects of Lilly's promotion efforts were felt long after the Co-Promotion Agreement ended, and the Co-Promotion Agreement specifically contemplates such long-reaching effects in the form of residual fees to be paid to Lilly for a period of 3 years after the end of the Agreement. Indeed, plaintiffs argue the effect of the impressions Lilly created about ACTOS was *designed* to continue, and the residual fees paid to Lilly reflect the level of success Lilly was anticipated to have in its promotion of ACTOS. As plaintiffs aptly argue, "Lilly does not escape liability merely because, having helped lay the landmines, it disappeared from the battlefield before Plaintiffs arrived." Thus, plaintiffs argue the *effects* of Lilly's actions were designed to felt long afterwards and were, in fact, felt long afterwards, or so a jury could conclude.

This Court agrees. For a period of three years after Lilly ceased to actively promote ACTOS, Lilly nevertheless continued to collect a residual fee based upon the scope and success of its efforts

---

[7] Plaintiffs do not appear to dispute that the actual termination date of the agreement was in March 2006. The Agreement itself states the term of the agreement was to be "seven years from the ACTOS Launch Date." *See* Agreement, attached as aexhibit 21 to Plaintiffs' opposition brief, Doc. 3545, at §2.08 (A).

[8] Mr. Allen started taking ACTOS pursuant to prescription in June 2006, but may have taken samples earlier, beginning in April 2006.

14

during the official term of the Co-Promotion Agreement. Thus, a jury could conclude that specific alleged misrepresentations concerning ACTOS made to Drs. Reilly and Lamb in 2004 continued to affect the prescribing habits of these physicians in 2006 and 2007, within the three-year window envisioned by Lilly and Takeda in their Agreement, and within the relevant time period for Mr. Allen. Under these facts, this Court cannot conclude there can be no liability on the part of Lilly vis-a-vis Mr. Allen because the *official* term of the Co-Promotion Agreement had ended.

### (f) Plaintiffs' claims for loss of consortium

Because the Court denies the instant motion on all grounds raised in the motion and memorandum in support, the defendants' motion to dismiss the "plaintiffs' loss of consortium claim" is DENIED.

### IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment [Doc. 3415] filed by the Takeda defendants and Eli Lilly and Company is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 6th day of January, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE