RECEIVED

JAN - 8 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

Case 6:11-md-02299-RFD-PJH   Document 3839   Filed 01/08/14   Page 1 of 27 PageID #: 107252

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE: ACTOS® (PIOGLITAZONE)
PRODUCTS LIABILITY LITIGATION

MDL No. 6:11-md-2299

JUDGE DOHERTY

This Document Applies To:
*Allen, et. al. v. Takeda Pharmaceuticals
North America, Inc., et al.*
(Case No. 12-cv-00064)

MAGISTRATE JUDGE HANNA

**MEMORANDUM RULING:
MOTION TO ALLOW LIVE TESTIMONY
*VIA* CONTEMPORANEOUS TRANSMISSION**

This multidistrict litigation arises from product liability claims against the manufacturer and marketer of Actos® and other drugs containing pioglitazone. Pending before this Court is the Plaintiffs' Motion to Allow Live Testimony *Via* Contemporaneous Transmission.[1] For the following reasons, the Plaintiffs' Motion will be GRANTED.

The trial of this, the bellwether case, within this multidistrict litigation, is scheduled to begin on Monday, January 27, 2014. The Plaintiffs have moved for leave of Court to present testimony *via* contemporaneous video transmission for certain witnesses who are Defendants' current or former employees and whom Defendants, on December 23, 2013, declared will not be among those witnesses Defendants can produce at the January 27, 2014 trial. While the Plaintiffs' Memorandum does not include a list of the specific witnesses whose live video testimony they seek, this Court assumes the witnesses recently identified to the Special Masters at the Court's request, are those who are the subject of the instant motion.[2] The Plaintiffs have

---

[1] Rec. Doc. 3786. This motion has been urged on behalf of the Plaintiffs. The Plaintiffs' Memorandum in support is found at Rec. Doc. 3786-1 ["Memorandum"]; the Defendants' Memorandum in opposition is found at Rec. Doc. 3800 ["Opposition"].

[2] These witnesses are: Corporate Representatives for Eli Lilly and Company, Takeda Pharmaceuticals International Inc., Takeda Pharmaceuticals U.S.A. Inc. (fka Takeda Pharmaceuticals North America Inc.), Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals LLC, Takeda Development Center America (fka

1

not identified which of these witnesses' depositions, discovery or otherwise, might have been taken; they have not given this Court any particularized explanation of the testimony each witness is expected to proffer, the reason the witness is unavailable, or the purpose of each witness' testimony.  Rather, Plaintiffs have simply asserted they wish to present live testimony by certain witnesses alleged to be former and current employees of Defendants, who are beyond this Court's ability to compel their attendance at trial in Lafayette, Louisiana, and whose testimony the Defendants have only recently declared they do not intend to present live at trial.[3]

The Defendants' opposition does not reflect any challenge to the Plaintiffs' assertions that: (a) there exist individuals the Plaintiffs seek to call as live witnesses at trial; (b) these witnesses are current and former employees of the Defendants; (c) these individuals are outside of the subpoena power of this Court to compel live appearance in Lafayette, Louisiana; and (d) the Defendants do not intend to use, or have not been able to use successfully, whatever influence, sway, or control they might have over such individuals to induce their voluntary appearance at trial.

## I.   Authority to Permit Live Testimony by Contemporaneous Transmission from a Different Location

Rule 43 of the Federal Rules of Civil Procedure establishes the rule that witness testimony at trial must be taken in open court, but grants federal courts the authority to permit

---

Takeda Global Research & Development Center Inc.), Takeda California Inc. (fka Takeda San Diego, Inc. (TSD)), and a corporate representative to testify regarding the organizational structure of all Takeda entities; together with specific witnesses:  Chris Valosky; Chris Caggiano; Rich Daly; Virginia Blocki; Dan Orlando; Robert Spanheimer; Lawrence Mick Roebel; Mondira Bhattacharya; Anna Van Troostenberg; Glynn Belcher; David Recker; Claire Thom; Doug Cole; Larry Ellingson; and Yasuchika Hasegawa.  *See* Special Masters' Submission of Information [Rec. Doc. 3816].

[3] See Special Masters' Submission of Information [Rec. Doc. 3816] filed January 6, 2014.  The Scheduling Order, as amended, required the parties identify their will call witnesses no later than January 2, 2014 (including a declaration as to which of those witnesses would be testifying live at trial).  [Rec. Doc. 2657]  When it came to this Court's attention, in mid-December, that the Defendants were refusing to disclose to the Plaintiffs which of their current and former employees they would be bringing to trial, this Court, through the Special Masters, ordered both parties to declare which witnesses they would be bringing live on or before December 23, 2013.

appearance "in open court by contemporaneous transmission from a different location." Specifically:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise.  For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.[4]

Thus, this Court has the authority to grant the Plaintiffs' request, but only upon a showing of good cause, compelling circumstances, and with appropriate safeguards.  The 1996 Advisory Committee Notes – addressing the decision to grant this authority – noted the exception was not intended to swallow the rule:

> The importance of representing live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.  The opportunity to judge the demeanor of a witness face-to-face is accorded a great value in our tradition.  Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

Consequently, as a practical matter, once a federal court finds circumstances exist justifying contemporaneous transmission of witness testimony from a location outside of the courtroom, a party must either (a) obtain voluntary agreement of the witness to attend trial by video conference or (b) issue a subpoena to compel the witness' appearance and testimony from that location.

Rule 45 of the Federal Rules of Civil Procedure governs issuance of subpoenas and recently received a substantial revision that took effect approximately one month ago, on December 1, 2013.  Pursuant to Rule 45, this Court now, may issue a subpoena to a witness to

---

[4] Fed. R. Civ. Pro. 43(a).

appear and testify;[5] the subpoena may be served at any place within the United States;[6] and it may command a person to attend a trial either:

> (A)     within 100 miles of where the person resides, is employed, or regularly transacts business in person; *or*

> (B)     within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.[7]

## II.     Analysis

During the course of these proceedings, this Court repeatedly has advised the parties and their counsel that this Court agrees with their collective, oft-stated desire for the parties not to lose control of their case and not to allow this matter to become mired in the pretrial litigation process, and takes seriously its duty to move these matters toward resolution as judiciously, expeditiously, inexpensively, and responsibly as possible.  It is of no moment to this Court whether these proceedings are resolved by trial in this Court, amicably among the parties, or by remand to transferor courts for trial; it is important only that this Court complete its assigned task of managing pretrial procedures in a timely, judicially-efficient, and fair manner.  As the multidistrict litigation proceeding assigned to this Court includes some 2,800 cases originating from across the United States, and moves in tandem with an even larger number of cases within various state courts across the United States, the task presented for both this Court and the parties is a complex, and multifaceted one.  The parties, by agreement and based upon their respective choices, selected the use of "bellwether trials" as a means to aid this Court and them in their respective tasks.  This Court, at the time, experienced certain reservation as to their selection,

---

[5] Fed. R. Civ. Pro. 45(a)(1)(A)(iii).

[6] Fed. R. Civ. Pro. 45(b)(2).

[7] Fed. R. Civ. Pro. 45(c)(1).

suggesting other less expensive and less cumbersome means might be more advantageous, but acquiesced to the parties' desire for "bellwether" trials. Thus, this Court and the parties began down the path of selection of and preparation of those cases agreed upon by the parties for trial as "bellwether trials" and we now come to the point of trial of the first agreed-upon "bellwether" trial. The first two cases selected originate from New York and Ohio, respectively, and are scheduled for January 27, 2014 and April 14, 2014. All involved parties waived any objection as to venue. Consequently, a case originating from New York – i.e. the Plaintiff(s) reside(s) in New York – filed against Defendants, which have their principle places of business, generally, in Illinois, Indiana, and California, by way of operation of the multidistrict litigation process, agreement of the parties, and respective choice of each party, finds itself being tried in a Court in Lafayette, Louisiana, which is in neither the state of origin of the matter, nor where any defendant maintains a principal place of business. Again, this court notes this turn of events came to be only by way of the parties' choice, agreement, and expressed desire. Thus, the situation at hand creates circumstances which, outside the multidistrict litigation context, would likely not often arise, if at all, and would be highly unusual; however, within the multidistrict litigation context have become quite commonplace. Thus, the challenge for the Courts and parties engaged within a multidistrict litigation proceeding is to fashion the most efficient, judiciously sound and fair manner to perform the tasks assigned by Congress.[8]

*Good Cause.* From the outset, counsel were advised this Court was open to re-examination of old habits and routines which might have grown within the multidistrict litigation context that perhaps have, in some instances, created the types of Gordian knots that can lead to the stasis this Court and the parties seek to avoid. Consequently, this Court has made it clear

---

[8] *See* 28 U.S.C. § 1407.

5

from the outset this Court would be open to considering new ways of accomplishing the shared goals of the Court and the parties to move this matter forward, consistent with the requirements of due process, and within the applicable rules of procedure, using all available tools. After setting the initial bellwether trial date for November, 2014, which setting allowed for the commencement of discovery, this Court urged the parties to consider and discuss a number of alternatives to the standard bellwether process. After months of seemingly fruitful discussions and negotiations, together with considerable assistance and effort expended by the Special Masters, the parties reported to this Court in January, 2013 that no agreement would be possible; that the *Defendants* insisted upon the use of the standard bellwether trial process; and that in light of that decision, Plaintiffs desired the first bellwether case be tried in January 2014.

Shortly thereafter, this Court established a pilot bellwether program and issued the first of two scheduling orders, setting a series of bellwether trials, as the Defendants desired, and setting the first bellwether trial to begin Monday, January 27, 2014, as the Plaintiffs desired, with no objection being lodged by any party.

> This Court having considered the scope of these proceedings, the number of plaintiffs, the amount of discovery that will be required, and the time necessary to complete pre-trial preparations, hereby establishes a Pilot Bellwether Program ["PBP"]. The PBP establishes a stream-lined trial preparation schedule for a minimum of two Pilot Bellwether trials. This Court is aware that the schedule established herein will place extraordinary burdens on this Court, counsel, and the parties. Nonetheless, this abbreviated schedule is imposed so as to serve the very important goal of moving these proceedings toward completion of this Court's responsibilities in a reasonable timeframe.[9]

The Scheduling Order established deadlines, and set rules for discovery and pretrial preparation that accommodated the selected January 24, 2014 trial date, including specifications for the types of claims that would be eligible to be tried in the Pilot Bellwether Program; requiring that

---

[9] Rec. Doc. 2359, at 1.

6

general discovery, document production, core discovery, and bellwether-specific discovery proceed simultaneously; required expert identification and the production of expert reports before discovery had been completed; and instructed counsel to make significant efforts to produce witnesses for trial, rather than relying on deposition testimony. The parties have risen to the occasion, conducting discovery, document production, and motion practice in a fashion which now brings us to the commencement of trial in open court as scheduled. In order to accomplish this laudable goal, this Court has been receiving weekly oral reports from the Special Masters, who have been tirelessly working with the parties facilitating the ongoing progress and forward movement of this case, and reporting to this Court on the progress of discovery and on difficulties that might have arisen, and any disputes that those difficulties might have triggered, as well as reporting on the agreements the parties have reached in their ongoing, good faith efforts to comply with this Court's deadlines, as well as the deadlines of numerous state courts in which Actos®-related litigation is pending and simultaneously proceeding to trial. This Court, also, has made itself immediately and continuously available to provide contemporaneous guidance, prompt rulings, and any requested input so as to, also, facilitate the forward progress of the matter at hand.[10] Among the agreements reached by counsel, and reported to this Court by the Special Masters, was the parties' agreement to delay the taking of certain and multiple discovery depositions until after the previously-set October 1 discovery deadline in order to accommodate serious scheduling conflicts which had developed for counsel in August and September, and the parties' agreement to limit the number of trial depositions that could be taken by the Plaintiffs during the two months immediately prior to the commencement of trial on January 27, 2014. With certain grave reservations, this Court accepted the noted agreements.

---

[10] The Court notes, once again, its appreciation to and recognition of counsel's outstanding efforts in these proceedings on behalf of their respective clients.

It should be noted at the outset this Court responded to the parties' expressed concern that "with MDL cases often we lose control of our cases" by agreeing to adopt a "from the bottom up and not top-down" approach, allowing the parties to "control their cases" by agreement, with guidance provided by the Special Masters and within the broad confines established by the Court. Consequently, those agreements reached by the parties were and are shown great deference by this Court whenever possible. The "broad confines" laid out by the Court are reflected within the orders of this Court and particularly relevant to this inquiry, the Scheduling Order initially issued on February 19, 2013.[11] Most importantly for purposes of this motion, in light of the time constraint created by the parties' agreements and choices, the Scheduling Order imposed the requirement upon both parties to assist trial preparation by bringing as many witnesses to trial as possible, rather than relying on depositions:

> In an effort to streamline trial preparation as much as possible, ***the Court expects the parties to make significant efforts to produce witnesses for trial rather than relying on deposition testimony.***[12]

Significantly, according to the Plaintiffs, the witnesses Plaintiffs now wish to call live *via* contemporaneous transmission are all current or former employees of one or more of the Defendants. There is no indication, from either party, of what efforts were made to produce or obtain voluntary agreement from the witnesses to appear at trial, in accordance with the instructions of this Court, however, this Court assumes the Plaintiffs would not be requesting such extraordinary relief if voluntary cooperation were a viable option. As previously noted, given the unique posture of this case, the parties were given notice and instructed that each was to "make significant effort[s] to produce witnesses at trial" in order to better facilitate trial preparation and best utilize the time available for trial preparation. The order was not limited to

---

[11] Rec. Doc. 2359.

[12] Id. at 5 (emphasis in original).

their own witnesses, given the self-induced time constraints. The Plaintiffs now argue that from Defendants' December 23, 2013 declaration, it has only now become apparent a significant number of current or former employees of the various Defendants, necessary to the Plaintiffs' case, are not being brought to trial by the Defendants and, therefore, would be unavailable to the Plaintiffs at trial without application of the processes provided by Rules 43 and 45 of the Federal Rules of Civil Procedure. In response, the Defendants have made no effort to explain whether the witnesses are themselves unwilling to appear for trial; whether the Defendants have asked them to appear; whether the Defendants have chosen not to ask them appear; or how, if at all, the Defendants have attempted to comply with this Court's Scheduling Order. Though lacking this information, this Court will assume the Defendants made at least some effort to comply with their obligation to make "significant efforts" to produce their own employees and former employees for trial and that, for whatever reason, they were unable to arrange those appearances at trial.

Ideally, all witnesses would appear in Open Court and testify before the trier of fact; however, as the Federal Rules of Civil Procedure and its comments reflect, even in normal circumstances this is not always possible. When not possible the rules first provided for depositions which could be read in Open Court, and as technology progressed, so did the rules, allowing for video depositions which could be played in Open Court, thus, allowing the witness to appear before the trier of fact at trial in this more beneficial fashion. Again, as technology has continued to evolve, so have the applicable rules, now allowing witnesses to appear in open court by "contemporaneous transmission from different location," but only "for good cause in compelling circumstances, and with appropriate safeguards" and with the Court's permission. As the comments caution, this evolution provides a tool to be used only when it serves "truth-telling" and is not to be used when it would disserve that same "truth-telling" function of trial.

Consequently, the rule, itself, builds in and requires safeguards to protect the institution established by our founding fathers and which has, over time, been further fashioned through the lens of experience and the evolution of technology. Rule 43 of the Federal Rules of Civil Procedure allows for testimony in open court by "contemporaneous transmission from a different location," and Rule 45 provides the mechanisms to assure that appearance. It is this/these mechanisms the Plaintiffs wish to employ.

This Court sees the use of live trial testimony as an essential aspect of trial, thus its early instruction to counsel to facilitate such live testimony. This Court – for these purposes and based on past performance –, will assume the parties, despite what this Court believes to be the best efforts on all sides, simply were unable to make the necessary arrangements for producing the necessary witnesses at trial. Under these circumstances, and for the reasons described above and more fully explained below within the discussion of the compelling circumstances which exist, this Court finds good cause exists for using live witness testimony *via* contemporary transmission in order to best serve the trier of fact, and to protect the parties' trial date, as well as to protect the integrity of subsequent trial dates currently pending in these proceedings.

*Compelling Circumstances.* In this multidistrict litigation – a procedural format in which large numbers of cases are aggregated in one district and under one judge for pretrial preparations, which was created by Congress and implemented by the Judicial Multidistrict Panel, not necessarily voluntarily selected by the parties – the parties are in full agreement the use of a bellwether trial program is an appropriate and, they agree, necessary part of the pretrial preparations of thee MDL proceedings. Not only is there no dispute as to this issue, the parties, themselves, selected the bellwether process. The expressed desirable and appropriate goal of employing a series of bellwether trials is reflected by the nomination of those cases for trial that can help generate information for the use of "the parties and the court to determine the nature

and strength of the claims, whether they can be fairly developed and litigated on a group basis and what range of values the cases may have if resolution is attempted on a group basis."[13]

Consequently, the verdict in the bellwether trials, and in particular this first bellwether trial set to begin on January 27, 2014, will be used in this representative manner, and therefore, this first bellwether trial should present the testimonial evidence of both sides as fairly and completely as possible.  The circumstances under which this first case has proceeded toward trial have reflected the goal inherent in the bellwether process; however, the bellwether process itself has created certain challenges to that goal, as well.  The Plaintiffs' argument suggests they have not been and will not be able to obtain the necessary video trial depositions of the large number of defense witnesses they have only now learned the Defendants will not be able to produce at trial and whom they need in order to try their case properly, due to the Defendants' December 23, 2013 declaration, and the change to the scheduling order reflecting the attorneys' and witnesses' scheduling difficulties experienced over the past several months which resulted, in part, from the reality that the Defendants' counsel and witnesses have been participating in Actos®-related state court litigation throughout the United States, thus, (a) making it impossible for the Plaintiffs to complete discovery and schedule the necessary depositions in this case; and (b) resulting in the parties "still taking discovery depositions until a few days ago;" and (c) additionally, arguing the large number of motions filed primarily by the Defendants in this case has had the effect of delaying resolution of select motions until the last weeks before trial; and (d) the parties' continue to present disputed video depositions for evidentiary resolution by this Court.  Consequently, notwithstanding their and the Court's best efforts, it is clear the parties and this Court simply will not be able to rule on the very large number of additional video deposition

---

[13] MANUAL FOR COMPLEX LITIGATION, § 22.315 (4th Ed. 2013).

transcripts and objections that would be required if the Plaintiffs were not permitted to use the procedures established in Rules 43 and 45 to present live testimony at trial *via* contemporaneous transmission as to the recently identified current and former employees of the Defendants who the Defendants now declare they will not produce in Open Court. Consequently, for all the reasons noted above, and for the reasons contained in the discussion which follows, this Court finds the Plaintiffs have demonstrated there exists a compelling need for contemporaneous transmission of live testimony from a different location of those current and former employees whom on December 23, 2013 they learned Defendants would not produce at trial.[14]

This Court further notes that under the circumstances at hand, Rules 43 and 45 of the Federal Rules of Civil Procedure are not being used *in lieu of the more desirable live testimony in Open Court* at the location of the Court, *rather are being employed to more closely provide "live" testimony in Open Court when the witnesses* **cannot** *appear in Open Court at the location of the Court* and *when video depositions are not a viable means of securing the appearance of those witnesses*. Thus, this Court finds the employment to Rules 43 and 45 of the Federal Rules of Civil Procedure, under these circumstances, and for the good cause shown – would **benefit** and **not undermine** the inherent goal of our system of justice established by our forefathers, of the "powerful force of truth-telling." Under the circumstances at hand, the employment of Rule 43 is not because "it is inconvenient for the witnesses to attend trial," rather, this Court assumes the Defendants have made the ordered effort to make available those witnesses over whom they have control or sway. Consequently, the employment of Rule 43 is because, this Court assumes, the witnesses are not available for production in Lafayette, Louisiana by the Defendants as instructed by the Court within its Scheduling Order. Again, this Court notes the Scheduling

---

[14] See fn 3.

12

Order was specifically tailored to the unique challenges presented by the bellwether process within a multidistrict litigation, as well as the unique time constraints necessitated by the parties' choices made within the MDL process.

Additionally, this Court notes that, particularly at this stage of the proceedings, allowing contemporaneous live transmission likely would be substantially less expensive, and faster, than use of video depositions when one considers not only the time and expense required to take the video depositions, but also the attorney time and expense inherent in identifying deposition excerpts, making objections to those excerpts, and the time required to make the necessary rulings by the Court on those objections, as well as the time and expense of editing by a videographer after the Rulings are made. It is not, also, lost on this Court this expense of time by the attorneys would, now, be required at a time most critical in and for trial preparation – the two to three weeks immediately before commencement of trial. As Defendants have only on December 23, 2013, declared which witnesses they are able to produce, it seems without question time will not allow the full process involved with the taking and use of video depositions to be employed. For these reasons, as well as all noted above and which follow, this Court, again, finds the spirit and intent of Rules 43 and 45 of the Federal Rules of Civil Procedure are served by the process the Plaintiffs have proposed.

This Court has searched for and has not located any controlling jurisprudence issued by either the United States Supreme Court or the United States Court of Appeal for the Fifth Circuit or any other Circuit, on the issue presented by the Plaintiffs' motion, nor have the parties directed this Court to any such jurisprudence. Moreover, in the 17 years since Rule 43 was amended to provide specifically for the possibility of contemporaneous transmission of

testimony, if not the only decision directly applying Rule 43 in the context of a multidistrict litigation, certainly the most on point, is In re Vioxx Products Liability Litigation.[15]

Judge Fallon, in Vioxx, adopted a five-factor test that originally was articulated in In re Washington Public Power Supply System Securities Litigation,[16] also, a multidistrict litigation decision, issued in 1988, several years *before* the 1996 amendment to Rule 43 setting out the good cause/compelling circumstances standard that this Court is bound to apply. Of the five factors used by Judge Fallon to evaluate whether compelling circumstances existed that would justify an order permitting contemporaneous transmission of live testimony,[17] three cannot easily be applied by this Court to the facts of this case because neither party has provided this Court with the information necessary to determine who has control over the missing witnesses, why they aren't appearing, or what benefit accrues to the defense if they do not appear live at trial.[18]

However, this case differs from both Washington Public Power Supply System Securities and Vioxx, as this Court issued a Scheduling Order specifically tailored to first bellwether trials instructing all parties to "make significant efforts to produce witnesses for trial rather than relying on deposition testimony" in "an effort to streamline trial preparation as much as possible." The witnesses in play, the Plaintiffs have indicated, and Defendants do not dispute,

---

[15] 439 F.Supp.2d 640 (E.D.La 2006) (Fallon, J.).

[16] MDL No. 551, 1988 WL 525314 (W.D.Wash. 8/9/1988).

[17] Those five factors are: (1) control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation. *See* id. at 643, *citing* In re Washington Public Power Supply System Sec. Litig., MDL No. 551, 1988 WL 525314 (W.D.Wash. 8/9/1988).

[18] As the dynamics in the instant case would appear to be similar to those in Vioxx, this Court would feel justified in making certain reasonable assumptions about the point and purpose of these witnesses' unavailability; however, such assumptions are not necessary because there are ample other reasons to justify granting the Plaintiffs' motion. Suffice it to say, the Defendants have not pointed this Court to any evidence that they will be harmed (other than perhaps tactically) by having their employees and former employees appear live by videoconference rather than by videotaped deposition.

14

are all current or former employees of the Defendants. Given this Court's instruction to counsel that they should "make significant efforts to produce witnesses for trial . . ." and as the Defendants' counsel now do not include these witnesses as among the ones they will be able to produce at trial, this Court – again, based on past compliance with this Court's orders by the Defendants' counsel – will assume the witnesses, all former and current employees of the defendant companies, *cannot* appear in Lafayette, Louisiana for the January 27, 2014, trial. As noted, the Plaintiffs argue, and the Defendants do not dispute, the relevant witnesses are all current or former employees of Defendants, therefore, this Court assumes the Defendants would have whatever control or sway which might be available over the relevant witnesses. Furthermore, as the witnesses are all outside the immediate subpoena power of this Court as to appearance at trial in Lafayette, Louisiana, without employment of the procedures established in Rules 43 and 45 of the Federal Rules of Civil Procedure, which allow for appearance in open court by way of contemporaneous transmission from another location, the Plaintiffs cannot command the witnesses' appearance in open court in any way other than the contemporaneous transmission *via* video transmission or video deposition – which time now will not allow. Additionally, this Court notes, as the witnesses are not disputed to be current or former employees of the Defendants, and, as it is the Plaintiffs who argue application of Rules 43 and 45, the risk of the Plaintiffs using Rules 43 and 45 as a trial strategy *to avoid live appearance*, likely, is not at play. Nor will this Court assume that the Defendants' failure to produce current (and, if possible, former) employees is being employed as a trial strategy, as doing so would be a direct violation of this Court's Scheduling Order.

As this Court has already acknowledged, the remaining two factors – the fact that this is a complex, multi-state, multidistrict litigation that requires flexible management – clearly weigh as heavily in favor of granting the Plaintiffs' motion as they did in both <u>Vioxx</u> and <u>Washington</u>

<u>Public</u>.   Even more persuasive is the point that, under the circumstances present in this bellwether case, contemporaneous transmission of live witness testimony will better allow the jury to more realistically "see" the live witness along with "his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration," without editing or the unavoidable esthetic distance created by a video deposition and, thus, more fully and better satisfy the goals of live, in-person testimony, while avoiding the short-comings of either written or video deposition testimony perhaps recorded weeks or months earlier, prior to whatever developments might have occurred between the time the deposition was recorded and the time the testimony by video deposition is presented at trial.[19]   Furthermore, a trial, itself, is a dynamic, ever evolving process and the use of contemporaneous transmission of live testimony better allows for the witness and counsel to be responsive to the inevitable, unexpected developments and shifts that always occur during trial.   In so doing, the jury is better and not less served as the witnesses - with the employment of Rules 43 and 45 - will be able to contemporaneously and most relevantly comment on the newest developments in real time and unedited watching and judging the witnesses as the trial unfolds – a possibility unavailable with previously recorded testimony or earlier more limited technology.   Further, use of "live" contemporaneous transmission grants the trier of fact – here, the jury – the added advantage inherent in observing testimony in open court that is *truly contemporaneous* and part of the whole trial experience, thus, better reflects the *fluid dynamic* of the trial they are experiencing, and, better serves the goal of "truth telling."

---

[19] *See* <u>Vioxx</u>, 439 F.Supp.2d at 644, *citing* <u>Arnstein v. Porter</u>, 154 F.2d 464, 470 (2d Cir. 1946).

16

## III.     Defendants' Arguments

The Defendants have made three primary arguments opposing the Plaintiffs' motion. Two will be addressed below; the third, opposing use of the In re Washington factors, is moot because this Court has not adopted those factors as determinative in this analysis.

### A.     Plaintiffs are trying to use Rule 43 to Expand the Scope of Rule 45 Subpoena Power

The Defendants begin their opposition to the Plaintiffs' Motion by misreading both Rule 43 and Rule 45, and by failing to read them in conjunction as part of the Federal Rules of Civil Procedure.  Specifically, the Defendants argue the 2013 amendments to Rule 45 permit a Court to order a person to "attend a trial" only under certain circumstances, and that those circumstances do not include an order to "show up someplace" to have their testimony transmitted, *via* video transmission, to a courtroom "somewhere else."

It certainly is true that Rule 45 makes no mention of transmission of testimony *via* video to a courtroom, either to approve the issuance of subpoenas for such a purpose, nor to disapprove them; instead, *Rule 43* allows for appearance "in open court" by such contemporaneous transmission, and Rule 45 provides the mechanism to secure such appearance.  Nothing in Rule 45, itself, indicates the Rule must be read in the vacuum Defendants argue; to the contrary, Rule 45 must be read *in tandem with* Rule 43 and as a part of an harmonious whole that is the Federal Rules of Civil Procedure.  Rule 43 defines an appearance "at trial" in "open court," as including "testimony in open court by contemporaneous transmission from a different location;"[20] Rule 45 grants the mechanism to assure that appearance "in open court" by way of video transmission.

---

[20] Fed. R. Civ. Pro. 43(a).

Rule 43 reads in pertinent part:

> (a) IN OPEN COURT. *At trial*, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, *these rules*, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, *the court may permit testimony in open court by contemporaneous transmission from a different location.*[21]

Thus, the Defendants' argument is both myopic and flawed. A fair reading of the definition in Rule 43 of an appearance 'IN OPEN COURT" "at trial," specifically includes an appearance *via* live transmission, together with a fair reading of the scope of activities permitted to be ordered by subpoena under Rule 45 (specifically, a person may be ordered to "attend a trial"), establishes that the two Rules embrace and address the concept of appearance at "trial" to include contemporaneous live transmission from another location at the location of the Court. One would not argue that when using a written deposition or video deposition the witness is not appearing at trial "by way of deposition," at the location of the trial, notwithstanding the fact that the deposition was taken at another location. Nor would one argue Rule 45 would not allow the use of a subpoena to assure that "appearance by deposition." Here, contemporaneous transmission is now equally incorporated as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past. The subpoena power of Rule 45 of the Federal Rules of Civil Procedure is merely employed to facilitate yet another, now permitted, trial procedure and method of appearance. However, just as with video deposition when first embraced by the Federal Rules of Civil Procedure, certain safeguards and requirements – as discussed above - must be found and permission granted by the Court for contemporaneous transmission to be employed.

---

[21] Fed. R. Civ. Pro. 43(a) (emphases added).

The Defendants' argued interpretation of the safeguards required for use of Rule 43 would narrow the scope of the authority granted to federal courts by allowing contemporaneous transmission **only** when the absent witness agrees to appear voluntarily; that is not the limitation(s) included within Rule 43 of the Federal Rules of Civil Procedure.  No such limitation appears on the face of Rule 43, nor is found within the comments addressing the Rule, and this Court will not impose such an unjustified gloss on the rule by jurisprudential fiat.

For all the reasons discussed herein, this Court finds the Federal Rules of Civil Procedure specifically authorize a court to issue an order permitting contemporaneous transmission of live witness testimony as well as the issuance of a subpoena to compel such an appearance by a witness (within the location limits and under the conditions defined by Rule 45) for the purpose of the transmission of his or her contemporaneous testimony at trial, if the requirements included within both rules are heeded.  This conclusion further is bolstered by the expressed overarching policy determination that the Federal Rules of Civil Procedure are to be "construed to secure the just, speedy, and inexpensive determination of any action or proceeding,"[22] and this Court finds to allow the application of Rules 43 and 45 of Federal Rules of Civil Procedure, under the circumstances at hand, will for the reasons noted, aid in securing the just, speedy and less expensive determination of this proceeding.

### B.   No "good cause" or "compelling circumstances"

The Defendants argue good cause and compelling circumstances cannot be shown in this case, relying heavily on a number of decisions issued throughout the United States in which Rule 43 motions were denied.[23]  This Court has reviewed each of the cited cases and finds that none

---

[22] Fed. R. Civ. Pro. 1.

[23] *See, e.g.*, Palmer v. Valdez, 560 F.3d 965 (9th Cir. 2009); Niemeyer v. Ford Motor Co., 2012 WL 5199145 (D.Nev. 10/18/2012); Rodriguez v. SGLC, Inc., 2012 WL 3704922 (E.D.Cal. 8/24/2012); Garza–Castillo v. Guajardo–Ochoa, 2012 WL 15220 (D.Nev. 1/4/2012); Cross v. Wyeth Pharms., Inc., 2011 WL 2517211

involves a bellwether trial, within the context of a multidistrict litigation, nor do any present comparably complex and unique circumstances as are present here, nor do any reflect the choices made and agreements of the parties that exist in this matter, thus, making this case starkly distinguishable from the cases the Defendants cite.  In the absence of any strongly persuasive argument, this Court finds Defendants cases unpersuasive and distinguishable and further finds that better guidance is provided by the other MDL cases discussed above, and the Rules themselves.  This Court further notes Rule 45 became applicable *as amended* after each of the cases cited by Defendants,[24] and after Rule 43 was amended to allow for appearance at trial by way of contemporaneous video transmission from another location.

Finally, the Defendants argue that the 1996 Advisory Committee Notes to Rule 43 describe circumstances under which contemporaneous transmission from another location would be permissible under the rule, as well as several circumstances under which contemporaneous transmission of live witness testimony would not be permissible.  Again, none of the circumstances described in the Advisory Committee Notes are sufficiently similar to the ones involved in this case for this Court to assume those comments were intended to address a situation such as the one at hand.[25]  Moreover, notwithstanding the Defendants' argument, the Advisory Committee Notes are not intended to be, nor does this Court interpret them as providing, an *exclusive* list of the "compelling circumstances" under which contemporaneous

---

(M.D.Fla. 6/23/2011); Matovski v. Matovski, 2007 WL 1575253 (S.D.N.Y. 5/31/2007); Dagen v. CFC Grp. Holdings Ltd., 2003 WL 22533425 (S.D.N.Y. 11/7/2003).

[24] *See* Vioxx, Washington Public.  *See also* In re San Juan Dupont Plaza Hotel Fire Litigation, 129 F.R.D. 424 (D.P.R. 1990) (Acosta, J.)

[25] For instance, "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness". . . . "Other possible justifications for remote transmission must be approached cautiously.  Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena . . ." Rule 43, Advisory Committee Notes, 1996 Amendment.

transmission of live testimony may be permitted.  The Notes do not discuss circumstances comparable to the ones present in this case and, therefore, this Court does not find they are controlling, nor persuasive, on the instant motion.  Rather, one need only look to history to be reminded the tools provided by the Federal Rules of Civil Procedure do and have over history granted the parties the ability for innovation, change, and evolution reflecting the evolution of relevant and available technology, which is necessary for the trial process to remain relevant in an ever-changing litigation and technological landscape in order to best "secure the just, speedy and inexpensive determination of any action or proceeding."

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Allow Live Testimony *Via* Contemporaneous Transmission is hereby GRANTED under the following conditions and safeguards:

## I.  THE COURT WILL COORDINATE COMMUNICATIONS WITH OTHER FEDERAL COURTHOUSES.

Magistrate Judge Hanna is hereby appointed to oversee and coordinate communications with other federal courthouses, as well as with the information technology personnel employed by the Clerk of Court for the Western District of Louisiana.

Absent further order of the Court, all witnesses shall appear at the nearest United States Courthouse where they could be compelled to attend trial by subpoena under Fed.R.Civ.P. 45. All witnesses will be required to abide by the local rules of the court where the transmission originates insofar as attire, use of electronic devices, and public access is concerned. The party calling the witness shall advise this Court, at least fifteen (15) calendar days prior to trial, the identity of the witness, the name of the courthouse in each district where the transmission will be

originated and the intended date(s) for each transmission. The Court will coordinate with the other districts to arrange for a specific location for the transmission and use of equipment.

It shall be the responsibility of the party calling the witness to coordinate in those other district(s) all necessary personnel and logistical matters to allow for a timely and smooth transmission. This includes securing the attendance of a certified court reporter, providing the court reporter a copy of this protocol and insuring all exhibits have been timely provided to the court reporter as more fully set forth below.

## II.        THE COURTROOM IN LAFAYETTE, LOUISIANA

### A.    Additional Equipment

1.  In addition to the existing evidence monitors, a video feed to and from the location where the witness is present.

2.  A movable screen to be placed in the courtroom to the right of the presiding judge such that the witness views the podium where the questioning attorney will conduct his or her examination and the entirety of the jury. A remotely operated camera will be mounted atop the screen.

3.  A remote control operated locally that maneuvers the camera on the screen that is preset to allow the witness to see the Court, any lawyer who objects and the questioning attorney in rapid sequence.

4.  The IT personnel will use their best efforts to present legible copies of exhibits to the witness through electronic means dependent upon capacity and local rules in the distant location. However, counsel are to provide backup paper copies of the exhibits intended to be presented to the witnesses in accordance with the procedure below.

B.   **Instructions for behavior in the Courtroom.**

1.   *The Court, the Parties and Counsel* will occupy their usual places in the courtroom.

2.   *The Distant Witness.*

    a.   Replaced by 65-inch screen in the courtroom ("witness screen").

    b.   Witness screen facing podium and jury box.

    c.   Full torso frontal image on *witness screen at all times.*

    d.   If technically feasible, the witness will be presented with all exhibits electronically. If not technically feasible, the witness will be presented a paper copy of the exhibit by the court reporter on instruction from counsel or the Court.

    e.   Admitted exhibits and evidence shown electronically to the witness (pending ruling on admissibility) will be shown on all courtroom screens with the exception of the image on the witness screen, *i.e.*, the witness will be displayed on the witness screen at all times.

3.   *Questioning attorney*

    a.   Will address screen as if witness were on stand.

    b.   Normal rules for addressing the witness apply, *i.e.*, face the witness, stand behind the podium, etc.

4.   *Side bars and objections*

    a.   When side bar is allowed by the Court, the jury's sound will be automatically cut off as well as the sound to the distant location.

    b.   The witness *hears all objections unless instructed by the Court, pursuant to a party's request.*

III.   **THE COURTROOM OR OTHER LOCATION FROM WHICH TRANSMISSION IS ORIGINATING**

A.   *Persons present with witnesses.*   Spectators and counsel will not be allowed in the room where the witness testifies.   Present with the witness shall be a certified court reporter and any court technical staff needed for the transmission.

B.   **Additional Equipment**

1.   Monitors for the witness to see the pertinent person(s), document and/or exhibits in the courtroom.

2.   Adequate sound for the witness to hear any matters originating in Lafayette, Louisiana shall be made through Mr. Brent Norris, this Court's audio and video technician.

C.   **Instructions for the Witness' Behavior**

1.   The witness will sit facing the camera.

2.   A monitor will be placed in front of the witness such that the courtroom proceedings can be seen.

3.   During questioning, the witness will have a full view of the attorney at the podium and the jury.

4.   During objections, the witness will see a view of the courtroom well focusing on each attorney addressing the Court or the Judge when speaking.

5.   Due to technical reasons, the monitor should not be "blacked out" for any reason. *Should there be a need for the witness not to look into his monitor*, the camera on the witness screen will pan to a neutral location and the audio will be muted if necessary.

6.   The witness will see the Judge in the monitor whenever the presiding Judge addresses him or her, *i.e.*, instruct or question.   (Judge must address camera located over the witness screen).

7. Whenever feasible, documents or evidence will be shown to the witness electronically. If not feasible, documents available at the witness' location will be handed to the witness by the court reporter only on instruction by the Court or counsel.

### D. Duties of Court Reporter

1. Identify for the record who is present with the witness before he or she starts to testify. The courtroom deputy in Lafayette will administer the oath to the witness. The court reporter in the place of transmission will provide the witness any documents which the witness is asked to refer to during his/her testimony and perform such other duties and functions as the Court or counsel require.

2. Stenographically record the arrival/departure times of the witness, the beginning/ending times of testimony and recesses, and the description of exhibits admitted or shown to witness. At the conclusion of the testimony, provide this record with all the exhibits to the Clerk of Court, Western District of Louisiana, ATTN: Christine Guidry.

3. Breaks – In the event of a break, except as set forth below, the witness will remain in the room in the presence of the court reporter without communication to or from any person or other source. If there is an extended break the witness will be permitted to go to the rest room and be provided with lunch at the cost of the parties.

4. Instruct witness not to talk to counsel during breaks unless allowed by the Court.

5. The court reporter in Lafayette will transcribe the testimony as the official record.

## IV. MISCELLANEOUS INSTRUCTIONS

A. ***Documents to be shown to the witness.*** The party calling the witness shall furnish the court reporter, at least two *(2) working days* prior to the transmission all documents, properly labeled and indexed, about which the witness will be asked in direct examination.

25

Any documents needed for cross-examination or redirect, and that are not available at the site of the testimony when cross-examination commences, shall be shown to the witness via electronic means if feasible.

**B.    *Cost.***  The entire cost of the procedures authorized herein, any technical equipment that must be obtained as well as all logistical arrangements attendant to these procedures shall be borne by the party calling the witness.  This includes any expenses associated with necessary delays or adjournments and those warranted to complete cross-examination; provided, however, that any abuse of cross-examination, including repetitive or cumulative questioning, or any unnecessary prolonging of the testimony by repetitive, long or frivolous objections will result in allocation of costs due to delays to the party responsible.

**C.    *Cancellation of testimony.***  In the event of cancellation of the testimony of any witness, the cost associated therewith shall be borne by the party calling the witness.  If the cancellation was avoidable or resulted from matters within the cancelling party's control, the calling party shall bear the cost.  Should the witness not be available to testify for a valid reason, the party having control over the witness shall advise the party calling the witness immediately or else the cancelling party will bear all costs associated with the cancellation.

**D.    *Subpoena and option to testify in Lafayette, Louisiana.***  Any party seeking to compel the testimony of any witness pursuant to the procedures set forth herein shall serve upon the witness a subpoena at least ten *(10) calendar days* in advance of the intended testimony.

A witness subpoenaed to testify by way of a satellite transmission may elect to testify instead at trial in Lafayette, Louisiana, in which case all expenses related to such attendance shall be borne by the party calling the witness.  This option, however, must be notified to the calling party at least *seven (7) calendar days* in advance of the date for the transmission in which case the calling party may either decline the option or the party having control over the witness will

26

bear the cost of any expenses related to the aborted video testimony if these could not be avoided.

   **E.    *Recalling of witnesses.*** A witness who testifies via video will not be allowed to subsequently appear in person at trial.  His/her subsequent testimony, if allowed by the Court, will be either by way of subsequent video or deposition.  In the event it is by way of video, the calling party shall bear all associated expenses.

   THUS DONE AND SIGNED this ____8____ day of January, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE