RECEIVED
JUN 1 1 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE: ACTOS® (PIOGLITAZONE)     MDL No. 6:11-md-2299
PRODUCTS LIABILITY LITIGATION

JUDGE DOHERTY

This Document Applies To:
*Allen et al. v. Takeda Pharmaceuticals*     MAGISTRATE JUDGE HANNA
*North America, Inc. et al.*
Case No. 6:12-cv-00064-RFD-PJH

## MEMORANDUM RULING:
## PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LILLY

Pending before this Court is the Plaintiffs' Motion for Sanctions Based on Defendant Eli Lilly's Contumacious Conduct and/or Perjury ("Motion for Sanctions").[1] The Plaintiffs assert that the Defendant, Eli Lilly & Company ("Lilly"), during the trial of this matter, engaged in conduct so egregious that it justifies two sanctions: (1) an order striking all portions of Lilly's First Amended Answer, and (2) entry of a default judgment in favor of the Plaintiffs, Terrence Allen and Susan Allen, on all claims asserted against Lilly.[2] Briefing on the matter has been completed.[3] For the reasons that follow, the Plaintiffs' Motion will be DENIED IN ITS ENTIRETY.

I.     **The Motion for Sanctions**

Before describing the Motion for Sanctions, this Court notes that all of the briefing on the motion was filed prior to Mr. Hoven's appearance and testimony during an evidentiary hearing

---

[1] Rec. Doc. 3991.

[2] *See* Motion for Sanctions, at 1.

[3] The following briefs have been filed in connection with the Motion for Sanctions: (a) the Plaintiffs' memorandum presenting law and argument ("Memorandum in Support") (Rec. Doc. 3991-1); and (b) Lilly's Opposition to Plaintiffs' Motion for Sanctions Based on Defendant Eli Lilly's Contumacious Conduct and/or for Perjury ("Opposition") (Rec. Doc. 4042). No reply brief has been filed.

Page 1

conducted on March 18, 2014. The hearing addressed, *inter alia*, this Court's concerns about the veracity of Mr. Hoven's earlier testimony. The Plaintiffs' arguments will be described in their own terms despite the fact that the evidentiary hearing (and this Court's rulings during that hearing) have wrought a substantial change in circumstances.[4]

The Plaintiffs seek the imposition of sanctions upon Lilly – a defendant in this matter – on the basis of perjury allegedly committed by its former employee, Ron Hoven,[5] and have identified the following three general areas of alleged perjury:

- Mr. Hoven's trial testimony is alleged to be inconsistent with the Declaration that he signed six months before he testified at trial;

- Mr. Hoven's denial of knowledge about numerous issues (*e.g.*, the reason for Upjohn's decision to withdraw from development of Actos®; questions surrounding Actos® and its possible role as a cause of bladder cancer; matters of international concern; ghostwriting by his colleagues at Lilly, etc.); and

- Mr. Hoven's denial of any "contact" whatsoever with Zyprexa – directly or indirectly – in response to questioning by this Court.

The Plaintiffs argue that Mr. Hoven, on four separate occasions (Declaration, MDL deposition, cross-examination, and questioning by the Court), pursued a course of "stubborn resistance to authority" culminating with the most obvious perjury before the Court.[6] However, the Plaintiffs have not produced evidence of such "stubborn resistance to authority" in any context other than Mr. Hoven's appearance at trial.

---

[4] Normally, this Court would have addressed the instant motion during the course of the trial. However, this Court was asked by the Plaintiffs to delay consideration of the motion until the after trial had ended.

[5] Mr. Hoven testified on two occasions during the trial – February 20 and 21, 2014 – and during an evidentiary hearing conducted on March 18, 2014. His testimony can be found in Trial Tr. vol. XIV at 2011-2091, Feb. 20, 2014 (Rec. Doc. 4186); Trial Tr. vol. XV at 2101-2199, Feb. 21, 2014 (Rec. Doc. 4187); Trial Tr. vol. XXV, at 3891-3981, March 18, 2014 (Rec. Doc. 4198).

[6] Memorandum in Support, at 12. The Fifth Circuit has emphasized that a court, faced with a "stubborn resistance to authority," is justified in the extreme sanction of dismissal of a Plaintiffs' claim with prejudice. *See* Lewis v. Sheriff's Department Bossier Parish, 478 Fed.Appx. 809, 816 (5th Cir. 2012); Millan v. USAA General Indemnity Company, 546 F.2d 321, 327 (5th Cir. 2008). The Plaintiffs argue that similar finding would justify the default judgment against Lilly that they seek.

The Plaintiffs argue that Mr. Hoven testified as the corporate representative of Eli Lilly;[7] that Mr. Hoven's perjurious actions are attributable to Lilly; and, therefore, that sanctions should be imposed on Lilly for Mr. Hoven's actions.[8] They suggest Mr. Hoven's engaged in perjury and that his perjury constitutes a grave breach of the duty Mr. Hoven owed to this Court, that this alleged perjury imposed significant costs, delay and prejudice on them, and that Mr. Hoven's actions have caused harm to the "institutional integrity" of the judicial system.[9] They argue perjury is intolerable and that where, as here, a party has committed perjury, harsh sanctions are justified. The Plaintiffs request sanctions solely upon the basis of this Court's inherent power. They neither invoke any other source of this Court's authority to impose sanctions, nor link their request for sanctions to any activity other than alleged perjury at trial, nor make any request for any sanction that would suggest this Court should rely on any sanctioning authority other than its inherent power.

Alternatively, the Plaintiffs invoke an opinion issued by the United States Court of Appeals for the First Circuit permitting extreme sanctions when a court finds that a party has committed fraud in the conduct of litigation. They argue such sanctions can be justified by finding that (1) the information sought was sufficiently related to the current claim that it is unlikely it would be forgotten; (2) there is a broader pattern of deceit; and (3) the individual committing the fraud is not a neophyte.[10]

Finally, the Plaintiffs assert that the need for sanctions is amplified in this matter because this is a multi-district proceeding, that the contumacious nature of Hoven's conduct must be

---

[7] Memorandum in Support, at 21-24.

[8] Memorandum in Support, at 1-2.

[9] The Plaintiffs also assert that "there have been repeated abuses of judicial process" (Memorandum in Support, at 1), but the only perjury they allege (and attempt to prove) occurred during the trial of this matter. Therefore, it is unclear to what the Plaintiffs refer when they claim "repeated abuses of the judicial process."

[10] Memorandum in Support, at 14-15. *See* Hull v. Municipality of San Juan, 356 F.3d 98 (1st Cir. 2004).

Page 3

deterred with a severe sanction, and that this Court's handling of the "plethora of troubling issues to date," appears to have been "insufficient to deter a disregard for the oaths being given in this matter and the associated proceedings."[11]

In response, Lilly focuses primarily on its argument that Mr. Hoven's actions are not imputable to Lilly. The Defendant argues, as well, that Mr. Hoven's actions do not warrant sanctions; that the Plaintiffs' Motion for Sanctions is premature until the evidentiary hearing is held; that the evidence the Plaintiffs seek to introduce concerning the Zyprexa plea agreement and the Corporate Integrity Agreement is irrelevant; and that entering a default judgment against it under the facts of this case would violate its constitutional right to a trial by jury.

## II. Relevant Facts and Procedural History

Ronald Hoven was an employee of Lilly for almost 30 years, from 1984 to October, 2013.[12] From 1999 through 2006 – the time during which Lilly was partnered with Takeda to promote and sell Actos® in the United States – Mr. Hoven was engaged in sales (as a regional manager) and marketing (ultimately, as the U.S. brand leader for Actos and other diabetes drugs).[13] Mr. Hoven's testimony in this trial was presented during the Plaintiffs' case-in-chief. Mr. Hoven was identified by the Plaintiffs on their Will-Call Witness List[14] as a fact witness and former employee of Lilly who would appear either live or via satellite transmission. His anticipated testimony was described as follows:

> Mr. Hoven is an Eli Lilly Senior Director for Global Marketing for Insulin and Devices and will testify to provide testimony regarding the Takeda-Lilly alliance with Actos and Lilly's marketing practices with physicians. He is also on Defendants' will-call list. Mr. Hoven's testimony will relate to the planning, initiation, and operation of the Takeda-Lilly alliance. Mr. Hoven will also testify

---

[11] Memorandum in Support, at 2.

[12] Trial Tr. vol. XIV, at 2012:23-24 (Rec. Doc. 4186).

[13] Id., at 2015:21-2016:23.

[14] Rec. Doc. 3923, Exhibit 26.

as to discussions, development and usage of Actos promotional materials and efforts to relay purported cardiovascular and insulin resistance benefits by the Takeda-Lilly alliance to prescribers. His testimony will also extend to the promotion of Actos through key opinion leaders as well as Actos branding strategy. Mr. Hoven's testimony will involve Takeda and Lilly's knowledge and development of data that Actos acts as a dual PPAR drug. His testimony will also relate to Takeda company strategy in responding to concerns raised by the FDA of bladder cancer findings in dual PPAR agonists. Accordingly, Plaintiffs offer Mr. Hoven's testimony as evidence of Takeda and Lilly's negligence, including Takeda and Lilly's improper marketing of Actos, Takeda and Lilly's failure to properly and adequately study Actos, as well as Takeda and Lilly's failure to warn Mr. Allen and his physicians of the health risks associated with Actos. This testimony is not only offered to show Takeda and Lilly's failure to warn of Actos' health risks, but also to show Takeda and Lilly's material misrepresentations and omissions to Mr. Allen and his prescribing physicians concerning the efficacy and safety of Actos. Finally, the testimony will additionally show that Takeda and Lilly breached implied and express warranties as to Mr. Allen and his prescribing physicians concerning the efficacy and safety of Actos. Anticipated testimony is reflected in witness' MDL deposition or other testimony relating to Actos litigation.[15]

The Plaintiffs did not have the power to require Mr. Hoven appear as the corporate representative for Lilly, nor did they make any obvious attempt to do so on their Will-Call Witness List.

Lilly similarly named Mr. Hoven as a will-call witness at the trial of this matter when they filed their final Will-Call Witness List:[16]

**Ron Hoven**

A. **Address:**
   13841 Wellsley Lane
   Carmel, IN 46032

B. **Live or Deposition:** Mr. Hoven will testify live.

C. **Purpose of testimony:** Mr. Hoven will be called as a representative of Lilly to address its co-promotion agreement with Takeda.

D. **Subject matter of testimony:** Ron Hoven was a District Sales Manager for Lilly in 1999 at the time of the launch of ACTOS, and also served as Lilly's Brand Director for ACTOS from approximately 2003 until the Takeda/Lilly co-promotion agreement terminated in 2006. Mr. Hoven

---

[15] Id. at 17-18.

[16] Rec. Doc. 3923, Exhibit 27.

will testify regarding his personal knowledge of the co-promotion agreement, and the respective roles of the two companies under the agreement.[17]

Mr. Hoven was called by the Plaintiffs to testify on cross-examination during their case-in-chief, and, by Defendants choice, was questioned under direct examination by the Defendants at that time. Mr. Hoven testified for two days – February 20 and 21 – and, thereafter, was released from his obligation to this Court within the Allen trial. During the Defendants' direct examination of Mr. Hoven, the Plaintiffs moved this Court to reconsider its earlier ruling precluding the Plaintiffs from presenting evidence at trial of Lilly's criminal conviction in 2009 for off-label sales and marketing of a drug named Zyprexa. While considering the Plaintiffs' request, this Court questioned Mr. Hoven about his experience with, and knowledge concerning, Zyprexa. He categorically denied any "contact," direct or indirect, with the marketing of Zyprexa.

On Monday, February 24, 2014, this Court was notified by the Plaintiffs that they believed Mr. Hoven had testified falsely during his appearance in court the previous week. They supported these assertions by citing to several documents that had been produced by Lilly as part of Mr. Hoven's custodial files and requested permission to engage in further discovery, immediately, to ascertain whether further proof of Mr. Hoven's "contact" with Zyprexa could be found. This Court ordered Lilly to supplement its document production in this case to include Zyprexa-related documents reflecting any contact with Mr. Hoven (including emails).

The Plaintiffs informed this Court they intended to file a motion seeking further testimony from Mr. Hoven. In the interim, this Court arranged for Mr. Hoven to receive notice (through the Special Masters together with the defense counsel) of this Court's concern about the veracity of his earlier testimony, that he would likely be ordered to return to the trial to provide

---

[17] Id. at 3.

further testimony, and that, in the interim, he would be given full opportunity to consult counsel before being required to make a return appearance before this Court. The Plaintiffs' motion was filed on February 28, 2014.[18]

Mr. Hoven consulted and retained counsel in Indianapolis, Indiana (where he lives) and Lafayette, Louisiana (where this Court sits) and an evidentiary hearing outside the presence of the jury, was conducted on March 18, 2014 for two purposes: (a) to allow this Court to address its ethical obligation to determine whether a reasonable basis existed to believe that Mr. Hoven had committed the crime of perjury; and (2) to permit the Plaintiffs to fully cross-examine Mr. Hoven with the newly-identified documents so as to permit this Court to rule – based on the complete evidence – on the then-pending Hoven Motion and the admissibility of evidence of Lilly's criminal conviction related to Zyprexa.

During the evidentiary hearing, Mr. Hoven admitted, on several occasions, that his earlier testimony had been incorrect;[19] and that his incorrect testimony had been caused by his lack of memory of the information about which he was being questioned.[20] On those occasions, Mr. Hoven took advantage of the opportunity to correct the record, to provide corrected answers, and to supply this Court with an explanation of his interpretation and understanding of the documents with which he was presented.[21]

**III. Applicable Law**

This Court has issued a preliminary ruling [Rec. Doc. 3933] on Plaintiffs' Motion for Sanctions and will soon issue its Final Memorandum Ruling on the Plaintiffs' Motion for

---

[18] *See* Plaintiffs' Motion to Allow Live Testimony of Ron Hoven via Contemporaneous Transmission ("Hoven Motion") (Rec. Doc. 3992).

[19] *See, e.g.*, Trial Tr. vol. XXV, at 3903, 3915 (Rec. Doc. 4198).

[20] Id.

[21] Id., at 3905, 3916.

Page 7

Sanctions against the Takeda Defendants for the spoliation of documents. In those Rulings, this Court includes a lengthy discussion of its authority to impose sanctions pursuant to its inherent power as well as pursuant to Rule 37 of the Federal Rules of Civil Procedure. This Court will not restate that lengthy discussion here, but adopts and incorporates the full discussion of the applicable law of sanctions and this Court's inherent powers found in those two rulings as though set forth in full detail.[22]

In considering the current motion, this Court finds two aspects of the applicable law most relevant: (a) the fact that the Plaintiffs bear the burden of proof on their Motion for Sanctions, and (b) the fact that this Court cannot impose sanctions in the manner argued by Plaintiffs, pursuant to its inherent authority, without exceeding its Constitutional authority.

## IV.     Analysis

This Court will now address the Plaintiffs' factual and evidentiary arguments, followed by a brief discussion of this Court's view of sanctions in response to alleged perjury.

### A.     Imputation of Hoven's Actions To Lilly

The Plaintiffs' motion primarily turns on allegations that Mr. Hoven *perjured* himself during his trial testimony. In order to justify imposing sanctions upon *Lilly* for the actions of *Mr. Hoven*, for Mr. Hoven's alleged criminal conduct, however, the Plaintiffs must demonstrate that Mr. Hoven's perjured testimony was presented on behalf of Lilly and in that instance a separate criminal statute – subornation perjury – would be implicated. Inherent in that showing is showing that Mr. Hoven, himself, committed perjury.

The determination of whether Mr. Hoven's alleged perjurious testimony should be imputable to Lilly is a complex one and within the criminal arena, perhaps a misstated legal

---

[22] Again, the Plaintiffs have not asked this Court to take any action pursuant to any sanctioning authority other than its inherent power. Therefore, no discussion of any other such possible source of sanctioning authority will be discussed in this ruling.

issue. Nonetheless, the facts are neither as clear, nor as indisputable, as either party suggests. Ruling on the imputability of Mr. Hoven's testimony to Lilly would require this Court to address a long list of issues both criminal and civil – issues such as choice of law, the creation of an agency relationship, corporate identity and responsibility, etc. – in addition to delving deeply into the facts surrounding Lilly's ongoing relationship with Mr. Hoven. Moreover, conducting this analysis would be extremely difficult as neither party has briefed these legal and factual issues in any reasonable depth.

However, this Court finds it unnecessary to address the imputability of Mr. Hoven's testimony to Lilly because within the criminal arena, the issue is framed improperly, and within the civil arena, the outcome of such an analysis has no potential to change this Court's ruling on the Motion for Sanctions. Even were this Court to assume that such imputation is appropriate, this Court finds it without the authority to find the complained of criminal act occurred and Plaintiffs have requested no relief but exercise of its inherent powers, which this Court declines to do for the reasons noted below.

### B.  Sanctioning Perjury

First, the Plaintiffs make clear that they are aware that perjury is a statutorily defined crime, by citing this Court to 18 U.S.C. § 1621 (the general criminal perjury statute) and 18 U.S.C. § 1623 (the perjury statute for false declarations before a court), as well as citing this Court to a number of judicial opinions discussing the scope and definitions of perjury, its elements, and the evidentiary requirements for proof of perjury.[23] While other courts have endorsed the sanction of perjury as a civil, evidentiary matter,[24] this Court believes that because

---

[23] *See, e.g.*, United States v. Dunnigan, 507 U.S. 87 (1993); United States v. Laury, 985 F.2d 1293 (5th Cir. 1993); United States v. McAfee, 8 F.3d 1010 (5th Cir. 1993).

[24] *See, e.g.*, Brown v. Oil States Skagit Smatco, 664 F.3d 71, 77-78 (5th Cir. 2011).

perjury is a <u>criminal</u> act – not a civil violation – it must be addressed as such and all criminal defendants have a clear and Constitutional right to a trial by a jury.[25] Thus, this Court is without authority to find Mr. Hoven committed the criminal act of perjury – only a jury of his peers can make that determination.

As the record in this matter reflects, this Court interprets the Code of Conduct for United States Judges – known as the judicial canons of ethics – as requiring this Court, should it develop a reasonable basis for believing that the criminal act of perjury has occurred, to refer the matter to the United States Attorney's Office for handling by that representative of the Administrative Branch of the United States Government. It is for the U.S. Attorney to determine whether the matter should be given to a grand jury or whether the U.S. Attorney's office will issue a Bill of Information and the matter only then return to the judicial branch, i.e. Article III of the U.S. Constitution, for exercise of the criminal defendant's guaranteed right to trial by jury. Consequently, as to possible criminal acts, this Court believes that engaging in the proper constitutionally mandated process is the proper response to possible perjury during a trial. Any other approach would have the effect of arrogating to this Court the roles of grand jury, prosecutor, and jury.

For these reasons, and those to follow, this Court declines to assume roles beyond its constitutional authority, however, acknowledges that the parties are in vehement disagreement as to whether Mr. Hoven's trial testimony is imputable to Lilly but does not rule on the question at this time.[26]

---

[25] U.S. CONST. amend. VI.

[26] This Court has not closely considered the question and makes no hint, not even a whisper, as to how it would rule were the question properly presented and thoroughly briefed within the context of alleged civil and not criminal conduct.

C. No Additional Evidence Of False Testimony Or Other "Contumacious Conduct"

Furthermore, even had this Court found that Mr. Hoven's testimony could serve as a basis for civil sanctions against Lilly, Plaintiffs have not asked this Court to look to FED.R.CIV.P. 37 or any other possible avenue for redress. Rather, only the inherent powers of this Court are invoked and as is made clear in this Court's full discussion of the law – incorporated by reference – such invocation must include evidence of such egregious conduct as to justify the last resort of sanction issued, only, pursuant to the inherent power of the Courts. This Court finds, the evidence in the record, at this juncture, (which includes both the trial testimony cited by the Plaintiffs in support of their motion *and* the testimony by Mr. Hoven during the evidentiary hearing) does not support the sanctions requested by Plaintiffs. Whether with additional discovery or invocation of authority other than the inherent powers of the Court this determination might change, is a matter about which this Court will not speculate. This Court now turns to Plaintiffs' specific arguments. The Plaintiffs' arguments address three general areas of concern.

First, Mr. Hoven testified during the trial that he had no knowledge concerning a number of areas of inquiry. For instance, he denied having any knowledge of Upjohn's decision to withdraw from its partnership with Takeda in 1993; he denied having any knowledge of bladder cancer questions arising during the time that he worked with Actos (through 2006), and denied knowing anything about new developments with Actos after 2006; he denied knowing anything about international concerns prior to 2006; and he denied knowing anything about alleged ghostwriting by his colleagues at Lilly.[27] The Plaintiffs do not present any additional evidence – beyond that contained in the record – demonstrating that Mr. Hoven, contrary to his testimony,

---

[27] *See* discussion in Memorandum in Support, at 5-6.

had actual knowledge of these specific subject areas, rather argue, in effect, that he *must have known*, given his time with Lilly and thus, this Court must, also, *assumes* that he knew.

More importantly, perhaps, is the fact that Mr. Hoven was questioned by Plaintiffs' counsel during the evidentiary hearing on the distinction between someone who has no *knowledge* of something that occurred in the past and someone who has no *memory* of something that might or might not have occurred in the past.[28] Mr. Hoven's answers revealed that, at best, he is not particularly sensitive to that distinction.[29] However, when questioned directly, he agreed that it would have been more accurate for him to have testified – at least as to some of these areas of inquiry – that he simply didn't *remember* having seen documents that were found in his custodial files instead of *denying that he ever knew* anything about the content of those documents. Although regrettable and, likely, quite questionable, his testimony, standing alone and as a whole, does not <u>necessarily</u> support the conclusion that he <u>intentionally</u> testified falsely as to his knowledge of the subject areas with which the Plaintiffs were concerned. Rather, his testimony suggested, perhaps, and at the very best, confusion between not remembering having seen and testifying he had never seen certain specific documents. Although such a blurring of distinction is highly questionable and likely, extremely relevant to a <u>credibility</u> determination and even perhaps foundational for selection of future discovery, it is not, necessarily, proof of conduct of the nature required to trigger exercise of this Court's inherent power in the manner Plaintiffs requested. However, this Court agrees, it does raise the issue of credibility.

Second, in response to questioning by this Court, Mr. Hoven denied having had any "contact" with Zyprexa or its marketing. During the evidentiary hearing conducted on March 18, 2014, this Court conducted a lengthy examination of Mr. Hoven using certain of the

---

[28] *See* Trial Tr. vol. XXV, at 3937:8-12 (Rec. Doc. 4198).

[29] Id., at 3936:20-21, 23.

documents that had been identified by the Plaintiffs and which called into question the veracity of Mr. Hoven's earlier testimony.[30] As described in Section II, *supra*, Mr. Hoven repeatedly indicated, during the evidentiary hearing, that his earlier testimony accurately reflected his memory at the time he testified, but that his memory had been refreshed by reviewing the documents that the Plaintiffs had shown him. Mr. Hoven's refreshed memory ultimately led him to testify that his earlier testimony had been inaccurate. He then corrected his answers and provided explanations of his understanding of this Court's questions, as well as his earlier "contact" with the marketing of Zyprexa. Thus, as with his erroneous testimony about his memory, Mr. Hoven's testimony during the evidentiary hearing addressed his inaccurate testimony about his indirect "contact" with Zyprexa marketing. Again, whether this is evidence relevant to credibility or/and fodder for future discovery is not a matter before this Court, but, again, does not support the Draconian sanction Plaintiffs requested.

Third, the Plaintiffs argue that Mr. Hoven's Declaration – issued in 2013 in another litigation – is inconsistent with his trial testimony given in 2014 in this litigation. Specifically, the Plaintiffs argue that Mr. Hoven's Declaration asserts a much greater familiarity with all facets of Lilly's operations than he admitted to during this trial. This Court agrees, Mr. Hoven's Declaration is highly questionable when compared with his testimony before this Court and the glaring inconsistencies of memory and knowledge call into serious question his testimony before this Court. However, the Declaration contains language that is carefully-crafted, – no doubt by an unidentified attorney – and does not, on its face, mirror the language used by Mr. Hoven in this Court, and certainly does not reflect the shallow nature of his memory shown in this Court. The crafting and overstatement contained in the 2013 Declaration has proved to be a double-edged sword for Mr. Hoven. At trial, it was a detriment because it gave Plaintiffs' counsel a

---

[30] *See* Trial Tr. vol. XXV (Rec. Doc. 4198).

significant opening to cross-examine Mr. Hoven and to suggest, repeatedly, that Mr. Hoven was hiding something from the jury and this Court.[31] On the other hand, the careful crafting now has the salutary – again for Mr. Hoven – effect of being sufficiently vague and ambiguous so as to prevent the conclusion that there is a clear incompatibility between his Declaration and his trial testimony,[32] however, it nonetheless raises question as to whether Mr. Hoven's trial testimony or the Declaration, actually reflect Mr. Hoven's actual knowledge – a very serious question – but one of credibility for this Court and a separate question for the Court to whom the Declaration was submitted. The Plaintiffs' frustration with Mr. Hoven's testimony is clear and this Court shares that frustration; however, the evidence in the record at this time does not sufficiently support their request for the remedy sought.

This Court is not unsympathetic to the Plaintiffs' position. Again, whether this Court might have found violations of certain aspects of the Federal Rules of Civil Procedure, or perhaps might have been willing to impose less onerous sanctions upon Lilly than those requested by Plaintiffs pursuant to authority other than its inherent power is not a matter before this Court, and not a matter upon which this Court will speculate. However, this Court finds the evidence in the trial transcript does not warrant the draconian sanctions requested here that would support the findings upon which such sanctions could be founded. This Court is extremely aware of the instructions issued by both the United States Supreme Court and the Court of Appeals for the Fifth Circuit that the inherent power to sanction a party must be used

---

[31] *See, e.g.*, Trial Tr. vol. XV, at 2115, 2118-22, 2187-88, 2189-90 (Rec. Doc. 4187).

[32] Mr. Hoven's Declaration claims that he is "readily familiar with the research, development, manufacturing, marketing, and sales operation at Eli Lilly, including the marketing of Actos® (pioglitazone) in the United States." Rec. Doc. 3991-2. The Plaintiffs believe that this language means he should be able to answer all questions about Lilly from personal knowledge. However, a careful comparison of the list of areas of operations covered by the Declaration, with the Plaintiffs' areas of inquiry (for instance, pre-Lilly development of Actos®, the history of Actos® prior to 1999 or after than March 2006, international issues, etc.) reveals that the Plaintiffs' questioning was not addressed to areas of inquiry specifically covered by Mr. Hoven's claimed knowledge, as reflected in the Declaration.

sparingly and must be founded on an express finding of bad faith. This Court finds the Plaintiffs have failed to carry their necessary burden to justify the exercise of this Court's inherent power.[33]

### D. No Prejudice To The Plaintiffs

The Plaintiffs argue Mr. Hoven's perjury brought palpable benefits to Lilly, allowing the jury to proceed under the impression that Lilly, as a company, is a "great humanitarian." This Court agrees that Mr. Hoven's testimony during the evidentiary hearing clearly called into question the veracity of his earlier testimony praising Lilly, and did so by his own admission, however, this Court granted opportunity for the Plaintiffs to put Mr. Hoven back on the stand after the evidentiary hearing and Plaintiffs, for strategic reasons, declined. Furthermore, given the jury's apparent explicit rejection of Lilly's entire defense inherent in their verdict against Lilly - the verdict in favor of the Plaintiffs and against Lilly included not only compensatory damages, but also, a very large punitive damage award – this Court is extremely doubtful that the Plaintiffs' suffered any prejudice in this trial at the hands of Mr. Hoven or Eli Lilly. However, even in the absence of such a verdict, this Court would not have concluded that the Plaintiffs' interests had been prejudiced as they were given an opportunity to redress the perceived prejudice and they declined to take advantage of that opportunity.

Specifically, by filing the Hoven Motion, the Plaintiffs moved this Court for an order requiring Mr. Hoven to make himself available for further questioning at trial.[34] This Court – having convened an evidentiary hearing for the purpose, *inter alia*, of allowing the Plaintiffs to demonstrate the need for such additional testimony by Mr. Hoven – was in the process of ruling

---

[33] The Plaintiffs attempt to side-step the obligation to prove perjury is no more successful. Sanctions based upon the "fraud upon the Court" theory – supported by citation to a First Circuit decision, and with no reference to supporting jurisprudence from the Circuit by whose decisions this Court is bound – are founded on the same inherent powers discussed above and would not be permissible without an express finding of bad faith.
[34] Rec. Doc. 4029.

on the Plaintiffs' request (and had granted several aspects of the Plaintiffs' request) when Plaintiffs' counsel moved to withdraw the request and proceed with the trial without a further appearance by Mr. Hoven.[35]  This Court assumed – and continues to assume – that the decision was one based in strategy and reflected the considered conclusion that the damage, if any, caused by Mr. Hoven's testimony had been sufficiently redressed or that Plaintiffs did not, for whatever reason, did not desire to further pursue the matter at that time, before that jury, and at that stage in the proceedings.[36]

As the Plaintiffs' request to withdraw that aspect of their motion was made before this Court completed its ruling, this Court cannot say whether or not further redress might or might not have benefitted the Plaintiffs, nor whether any further form of redress during the trial would have been granted.  This Court can only assume that the Plaintiffs reached the conclusion that their attacks on Mr. Hoven's credibility during the trial were sufficient and would not be furthered by an additional appearance by Mr. Hoven, and given the jury's findings as to Eli Lilly, that determination, likely, was a correct and valid one.  This Court fully expects that future discovery involving Mr. Hoven will flesh-out these questions more fully.  In the meantime, the Plaintiffs assertion of prejudice is not persuasive.

Plaintiffs, also, argued sanctions based upon fraud.  For the same reasons, both legal and factual, cited above, this Court does not find Plaintiffs have carried their burden to establish the sanctions requested are due.  Again, whether the Declaration submitted by counsel allegedly on behalf of Mr. Hoven in 2013 might constitute fraud – in the nature argued by Plaintiffs – is not an issue or question for this Court as the unfortunate Declaration was not submitted to this Court,

---

[35] *See* Trial Tr., vol. XXV, at 3974:15-18 (Rec. Doc. 4198).

[36] It is of note that notwithstanding Mr. Hoven's testimony, this Court had upheld its earlier ruling as to testimony concerning Eli Lilly's earlier, criminal issues relating to another drug.  Whether this continuing limitation played any role in the Plaintiffs' counsels' decision is not for this Court to speculate.

rather was raised by Plaintiffs as a challenge to Mr. Hoven's credibility.

Again, although this Court shares the Plaintiffs' skepticism as to Mr. Hoven's testimony, and did not find Mr. Hoven's testimony credible as to most, if not all, of the matters raised, and also, finds the glaring contrast between Mr. Hoven's testimony given in this case, and the 2013 Declaration submitted under his signature very worrisome, the Court did not then find, and does not now find, that the record evidence is sufficiently strong to justify a referral to the United States Attorney for investigation of possible perjury, or to support the sanctions requested by Plaintiffs under an exercise of this Court's inherent power.

### V.     Conclusion

For the foregoing reasons, this Court will enter an Order this date DENYING IN ITS ENTIRETY, the Plaintiffs' Motion for Sanctions Based on Defendant Eli Lilly's Contumacious Conduct and/or for Perjury (Rec. Doc. 3991).

THUS DONE AND SIGNED in Lafayette, Louisiana, this __11__ day of __June__, 2014.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE