RECEIVED

NOV 2 8 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

IN THE UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: ACTOS (PIOGLITAZONE) PRODUCTS LIABILITY LITIGATION | CIVIL ACTION NO. 6:11-MD-2299 |
| | JUDGE DOHERTY |
| This document applies to:<br>*The Cherokee Nation*<br>*Civil Action No. 6:15-cv-1485* | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING:
## DEFENDANTS' AMENDED MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS

### I. INTRODUCTION

Pending before this Court is an Amended Motion to Transfer Venue, or in the Alternative, to Dismiss (hereinafter referred to as the "Motion") filed by defendants Takeda Pharmaceuticals USA, Inc. (f/k/a Takeda Pharmaceutical North America, Inc.), Takeda Development Center Americas, Inc. (f/k/a Takeda Global Research & Development Center, Inc.), Takeda Pharmaceuticals America, Inc., Takeda California, Inc. (f/k/a Takeda San Diego, Inc.), Takeda Pharmaceuticals International, Inc., and Takeda Pharmaceutical Company Limited (hereinafter collectively referred to as "Takeda") (Rec. Doc. 27), which was joined by Defendant Eli Lilly and Company (Rec. Doc. 28). Takeda's motion was opposed by The Cherokee Nation (Rec. Doc. 29). Considering: (1) the briefing filed by Takeda, Eli Lilly and Company and The Cherokee Nation; and (2) the arguments by the parties at hearings held by the Court on the record on September 25, 2017; and for the reasons that follow: the Court GRANTS Takeda's Motion to Transfer Venue, as Amended, and these claims are TRANSFERRED to the Northern District of Oklahoma. The Court declines to rule on the underlying substantive motions filed in the alternative by Takeda.

## II. PROCEDURAL HISTORY

This multidistrict litigation arises from product liability claims against the manufacturer and marketer of Actos® and other drugs containing pioglitazone. These MDL proceedings were instituted by the Judicial Panel on Multidistrict Litigation by order dated December 29, 2011. (MDL Rec. Doc. 1).

To facilitate the filing of cases, in the instant case, the parties negotiated and agreed to enter into a "First Amended Case Management Order," (MDL Rec. Doc. 2597) which was later amended on July 27, 2012 (the "Second Amended Case Management Order") (MDL Rec. Doc. 1538), which permits the parties to directly file their claims in the Western District of Louisiana, regardless of venue (hereinafter referred to as the "Direct File Order"). The Order states as follows:

> CASE MANAGEMENT ORDER
>
> I. Scope of Order
>
> This Agreed Order applies to claims brought by any U.S. citizen or resident based on alleged ingestation of Actos®, ACTOplus Met®, ACTOplus Met XR®, Duetact®, or pioglitazone ("Actos") that (i) currently are pending in MDL No. 2299, (ii) currently are pending in the Western District of Louisiana and are related to MDL No. 2299, or (iii) will be filed in, removed to, or transferred to this Court (collectively, "the MDL Proceedings").
>
> II. Direct Filing of Cases in MDL 2299
>
> A. In order to eliminate delays associated with transfer to this Court of cases filed in or removed to other federal district courts, and to promote judicial efficiency, any plaintiff whose case would be subject to transfer to MDL 2299 may file his or her case directly in the MDL Proceedings in the Western District of Louisiana (such cases are sometimes referenced as "Direct-Filed Cases").

B. Each case filed directly in the MDL Proceedings by a plaintiff who resides in a federal district other than the Western District of Louisiana will be filed in the MDL Proceedings for purposes of pretrial proceedings, consistent with the Judicial Panel on Multidistrict Litigations' December 29, 2011 Transfer Order ("Transfer Order").

C. Defendants will not challenge the venue of any Direct-Filed Case.
Upon the completion of pretrial proceedings consistent with this Transfer Order, this Court, pursuant to 28 U.S.C. 1404(a), will transfer Direct-Filed Cases to the federal district court in the district where the plaintiff allegedly was injured by use of Actos, or where the plaintiff resides at the time of such transfer, subject to severance of multi-plaintiff actions if necessary. **The parties will jointly advise the Court of the district to which each Direct-Filed Case should be transferred.**

D. Parts II.B and II.C do not preclude the parties from agreeing, at a future date, to try certain Direct-Filed Cases in this District.

E. The inclusion of any action in In Re: Actos Products Liability Litigation, MDL 2299, whether such action was or will be filed originally or directly in the Western District of Louisiana, **shall not constitute a determination by this Court that jurisdiction or venue is proper in this district.**

Direct File Order (emphasis added) (MDL Rec. Doc. 1538).

Thus, the Cherokee Nation case is pending in this Court by virtue of the Direct File Order that was negotiated by the parties and instituted by the Court. However, the Direct File Order contains certain underlying assumptions and conditions, and without those assumptions being met, it specifically does not confer proper venue in the case. The Direct File Order specifically contemplates the parties will jointly advise the Court as to where the returning cases should be

transferred once all pretrial matters are complete, and continues to specifically state that inclusion within the MDL does not equal a determination that venue is proper in the Western District of Louisiana. It also notes 1404(a) concerns should govern and outlines certain of those provisions. Consequently, the Order contemplates transfer should occur once pretrial matters are complete, §1404(a) concerns should govern, and the parties are to jointly advise the Court to where the matter should be transferred.

The pretrial process has run its course with over 11,000 state and federal cases having been resolved, a bellwether trial having been had, and underlying matters having been resolved. In June 2017, the parties conferred to discuss transfer of the case pursuant to the Direct File Order. On June 12, 2017, by email to the Special Master, counsel for the plaintiff stated that, "for the purpose of advising the Judge, [the lawyers for the parties] have agreed that the Northern District of Oklahoma is an appropriate forum." (Rec. Doc. 13-2). Plaintiff acknowledges the existence of this email, but focuses its argument on the fact that it has not agreed to the transfer of this matter to the Northern District of Oklahoma. This Court agrees, but the fact that this email does not constitute an agreement to transfer does not negate the email in its entirety. The Court finds that the email constitutes an acknowledgment by the plaintiff that the Northern District of Oklahoma is a proper venue for this case.

On August 17, 2017, Takeda filed a Motion to Transfer Case to the Northern District of Oklahoma (Rec. Doc. 13), which was joined by Eli Lilly (Rec. Doc. 12). On August 24, 2017, Plaintiff filed its Response to Takeda's Motion to Transfer (Rec. Doc. 15). On September 15, 2017, with leave of court, Takeda filed a Reply in Support of it Motion to Transfer (Rec. Doc. 20), which

was joined by Eli Lilly via oral motion on September 25, 2017 (Rec. Doc. 21). On September 25, 2017, oral argument was held on the motion. This Court ruled from the bench as follows:

> So the final ruling by this Court is that Takeda's and Eli Lilly's motion to transfer venue [Doc. 13] is granted in part and denied in part as follows:
>
> The motion to transfer the Cherokee Nation's claims based on the use of Actos set of claims, i.e., the negligence and implied warranty, is granted, and these claims are transferred to the Northern District of Oklahoma for the full reasons given by this Court.
>
> However, as to the motion to transfer the Cherokee Nation's claims that arise by way of how the, quote, settlement of the Actos litigation was handled and whether the Nation's quote, unquote, lien was protected in that settlement, those are deferred pending a full discussion and briefing of those claims which will now be set by this Court.

Transcript of Oral Argument on Motion to Transfer Venue at 53:5-18, September 25, 2017, In Re: Actos (Pioglitazone) Products Liability Litigation.

The Court clarified that with respect to its first ruling, the defendants would have to make a motion to sever the plaintiff's claims based on the individual use of Actos from the plaintiff's settlement based claims before the individual use claims could be transferred to the Northern District of Oklahoma. However, counsel for Takeda indicated it needed to discuss the Court's preliminary ruling with their client on this issue so the Court granted the parties additional time to discuss it with their clients and provide the Court with their clients' positions pursuant to the briefing schedule. Transcript of Oral Argument on Motion to Transfer Venue at 88:8-19, September 25, 2017, In Re: Actos (Pioglitazone) Products Liability Litigation.[1]

---

[1] The Court further ruled that because the parties did not address the issue of venue under 28 U.S.C. § 1391 with respect to the plaintiff's settlement claims, the Court declined to rule on it as well. Transcript of Oral Argument on Motion to Transfer Venue at 88:1-4, Sept. 25, 2017.

In conjunction with granting counsel for Takeda time to confer with their client regarding the issue of severance, on September 26, 2017, this Court issued a Minute Entry to clarify its September 25, 2017 ruling from the bench (Rec. Doc. 23):

> Before the Court memorializes the orders it entered with respect to the pending motions at the hearing conducted on September 25, 2017, it is necessary to clarify the ruling made on the record at the hearing. Although the Court ruled at the hearing that the plaintiff's negligence and implied warranty claims shall be transferred to the North District of Oklahoma, that ruling cannot be final at this time because the defendant has not asked the Court to sever claims in this case, Therefore, notwithstanding how the Minutes of this hearing will read, the ruling given on the record, as to the negligence and implied warranty claims, is merely a preliminary indication of how this Court intends to rule with respect to those claims, once it is determined whether the claims are to be severed or remain as part of the issues before the Court.
>
> The following ORDERS were entered at the hearing conducted in this matter on September 25, 2017.
>
> IT WAS ORDERED that, on or before October 16, 2017, the plaintiff shall file an outline of claims, as discussed on the record.
>
> IT WAS FURTHER ORDERED that, once the plaintiff has filed its outline clarifying its claims, the defendant shall file whatever filing it deems appropriate on or before October 23, 2017. Such filing shall be limited to 25 pages, with normal fonts and margins.
>
> IT WAS FURTHER ORDERED that the plaintiff shall file its response to the defendant's filing on or before October 30, 2017. Such filing shall be limited to 25 pages, with normal fonts and margins.

(Rec. Doc. 23).

Therefore, when the transcript is viewed in conjunction with this Minute Entry, as of September 26, 2017, this Court had not finally ruled on the issue of whether venue was proper under 28 U.S.C. § 1391 as an initial matter, or whether it should transfer any or all of the claims of the

6

plaintiff until such time as the briefing was completed and the issue submitted. The briefing schedule established by this Court was as follows:

| | |
|---|---|
| Plaintiff to file an outline of claims | October 16, 2017 |
| Defendants to file memorandum in support of motion | October 23, 2017 |
| Plaintiff to file response | October 30, 2017 |
| Defendant may request leave to file reply brief | November 6, 2017 |

Pursuant to the briefing order issued by this Court, plaintiff filed its Outline of Claims on October 16, 2017 (Rec. Doc. 25). On October 23, 2017, Takeda filed its Position on Severance (Rec. Doc. 26). Also on October 23, 2017, Takeda filed its Amended Motion to Transfer Case, or Alternatively, to Dismiss (Rec. Doc. 27), joined by Eli Lilly on October 24, 2017 (Rec. Doc. 28). On October 30, 2017, plaintiff filed a Response to Takeda's Amended Motion to Transfer and in the Alternative, to Dismiss (Rec. Doc. 29). On November 6, 2017, Takeda filed for leave to file a Reply in Support of it Amended Motion to Transfer or Dismiss (Rec. Doc. 30), to which Eli Lilly filed a Motion for Joinder on the same day (Rec. Doc. 31).

The Court has now reviewed all briefing, and the Court agrees with Takeda's argument that all matters would not be proper in the Western District, and therefore venue is improper as to all claims and issues of the Cherokee Nation per 28 U.S.C. § 1391. As there is no venue in the Western District for the State of Louisiana, this Court finds 28 U.S.C. § 1404 inapplicable. Dismissal or transfer is required under 28 U.S.C. § 1406. In the interests of justice, all claims shall be transferred to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1406, a district with both proper jurisdiction and venue, as acknowledged by the parties.

## III. LAW AND ANALYSIS

### A. UNDER 28 U.S.C. § 1391, VENUE IS NOT PROPER IN THE WESTERN DISTRICT OF LOUISIANA.

When venue is challenged, the court must determine whether the case falls within one of the three categories set out in 28 U.S.C. § 1391. If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under 28 U.S.C. § 1406(a). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, – U.S. –, 134 S. Ct. 568, 577, 187 L. Ed. 2d 487 (2013).

28 U.S.C. 1391(b) provides:

> (b) Venue in general.--A civil action may be brought in-
>
> (1) <u>a judicial district in which any defendant resides</u>, if all defendants are residents of the State in which the district is located;
>
> (2) <u>a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated</u>; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, <u>any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action</u>.

28 U.S.C. §1391(b) (emphasis added).

None of the claims alleged by the plaintiff satisfy the standard for venue in the Western District of Louisiana per 28 U.S.C. §1391(b). Subparagraph (b)(1) does not provide venue in the Western District of Louisiana because none of the defendants reside in Louisiana, let alone in the Western District of Louisiana. Rather, defendants are located in Illinois and Indiana (Rec. Doc. 1).

8

Subparagraph (b)(2) does not provide venue in the Western District of Louisiana because none of the events or omissions giving rise to the claim occurred here, nor is the property that is subject of the claim located here. With respect to The Cherokee Nation's claims based on individual tribal members' use of Actos®, there was no purchase or ingestion of Actos® by any tribal members in the Western District of Louisiana. Similarly, no events or omissions giving rise to The Cherokee Nation's settlement claims occurred in the Western District of Louisiana. The Claims Administrator BrownGreer PLC is incorporated in Virginia and, from its offices in Richmond, Virginia, designed and hosted the Actos Settlement Program official public website, designed the Actos Settlement Program claims database (including storing all received medical records submitted as part of Claim Packages), reviewed medical records related to all submitted Claims Packages, and rendered eligibility determinations and/or rejection notices for the more than 10,000 Claim Packages submitted as part of the Actos Settlement Program. (MDL Rec. Doc. 7140-1, 7140-7). Garretson Resolution Group administers the healthcare lien resolution process for the Actos Resolution Program and also administers the Qualified Settlement Fund under the Actos Resolution Program from which disbursements have been made to settling claimants and to resolve healthcare liens. Garretson's healthcare lien resolution activities for the Actos Resolution Program took place at Garretson's offices in Charlotte, North Carolina. (Rec. Doc. 7140-1, 7140-6).

Finally, subparagraph (b)(3) does not provide venue in the Western District of Louisiana because there is another district where the action could be brought, that is, the Northern District of Oklahoma. This Court concludes that, notwithstanding the manner in which the issue has been framed by the parties, 28 U.S.C. §1406 governs because venue is not proper in this Court. The Court

further concludes that it is in the interest of justice to transfer The Cherokee Nation's claims to the Northern District of Oklahoma now that pre-trial proceedings have been concluded.

### B. BECAUSE THIS COURT LACKS VENUE UNDER 28 U.S.C. § 1391, TRANSFER OR DISMISSAL UNDER 28 U.S.C. § 1406 ARE THE ONLY OPTIONS AVAILABLE TO THIS COURT.

Under the plain language of 28 U.S.C. § 1406, transfer or dismissal is mandatory in a case like this, where venue does not exist and there has been no waiver of venue.

> The district court of a district in which is filed a case laying venue in the wrong division or district **shall** dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406 (emphasis added).

The United States Supreme Court has interpreted this provision to provide guidance to the courts on when transfer would be appropriate instead of dismissal. *Goldlawr v. Heiman*, 369 U.S. 463 (1962). In *Goldlawr*, the Court determined that if the plaintiff's claims were dismissed due to lack of venue, the plaintiff would lose a substantial part of its cause of action due to the statute of limitations.

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years-that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that 'the interest of justice'

> may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities.' It would at least partially frustrate this enlightened congressional objective to import ambiguities into § 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired.

*Goldlawr*, 369 U.S. at 466-67.

Citing this language from *Goldlawr*, the Fifth Circuit adopted a similar position in *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967):

> Looking to the language of § 1406, the statute is couched in terms of 'laying venue in the wrong division or district.' The statute does not refer to 'wrong venue', but rather to venue laid in the 'wrong division or district.' We conclude that a district is 'wrong' within the meaning of § 1406 whenever there exists an 'obstacle (to) . . . an expeditious and orderly adjudication' on the merits.
>
> . . .
>
> We now hold that a transfer is authorized under § 1406(a) to 'any district or division in which it could have been brought' if the transferor forum finds that it is 'in the interest of justice' to order it.

*Dubin*, 380 F.2d at 815-16.

In a case not binding on this court but recently relied on by both the Western and Eastern Districts of Louisiana, *Minnette v. Time Warner*, 997 F.2d 1023, 1026-1027 (2nd Cir. 1993), the court provided guidance on when transfer is appropriate in lieu of dismissal. If there is another district or division in which the action could have been brought, transfer is preferred to the harsh remedy of dismissal. Transfer avoids any statute of limitations problems and the necessity of filing and serving a new action. *Minnette*, 997 F.2d at 1026-27. The court in *Minnette* determined that the interests of justice would be best served by transferring the case rather than dismissing it. If the court

11

were to dismiss the action, the plaintiff's claims would have been time barred by the statute of limitations. *Minnette*, 997 F.2d at 1026.

Magistrate Judge Patrick Hanna in the Western District relied on the *Minnette* case in *Huot v. MT State Dept. of Child & Family Services*, no. 6:17-cv-0955, 2017 WL 4507483 (W.D. La. 9/18/17) for the proposition that "whether dismissal or transfer is appropriate lies within the sound discretion of the district court." In *Huot*, Judge Hanna determined that dismissal would be more appropriate than transfer because the same case was already pending in a Montana state court, where both jurisdiction and venue were proper.

The Eastern District of Louisiana has also relied on the *Minnette* case. In *Orgeron v. Moran Towing Corp.*, no. 4164, 1994 WL 518313 (E.D. La. 9/21/1994), an unreported case, the court relied on *Minnette* in its interpretation of 28 U.S.C. § 1406. The *Orgeron* court further established factors to consider when deciding to transfer or dismiss a case due to lack of venue.

> When a plaintiff commences an action in the wrong district or division, the federal court will either dismiss the action for improper venue or transfer the case to any district or division where it could have been brought if such a transfer would be in the interest of justice. 28 U.S.C. § 1406(a). The purpose of the statute in allowing District Courts the discretion to dismiss or transfer is to eliminate impediments to timely disposition of cases on the merits. Transfering [sic] the case is the preferred remedy because it avoids any statute of limitations problems and the necessity of filing and serving a new action. *Minnette v. Time Warner*, 997 F.2d. 1023 (2d Cir. 1993). It is especially appropriate here where the defendants, by their own motions, requested the transfer of the case as an alternative to dismissal.
>
> The transfer must be to a district where the action could have been brought. This means the proposed transferee court must have subject matter jurisdiction and be a proper venue, and the defendants must be subject to personal jurisdiction in the transferee court…

> However, a transfer is available only if it is "in the interest of justice" to transfer the matter to a different forum. To determine if an action is in the interest of justice, the Court should consider such factors as ease of access to proof, availability of witnesses, and other practical considerations that make the trial of a case easy, expeditious, and inexpensive. *McAlister v General American Life Insurance Co.*, 516 F.Supp. 919 (W.D. Ok. 1980). Here judicial economy is well served by the transfer since the disability for which Orgeron seeks benefits arises from an accident that occurred in New York. The plan under which he seeks benefits is administered in New York and nearby Connecticut. The relevant records and persons responsible for the plan's administration are also located in this area. The Court finds that it would be in the interest of justice to transfer this case to the Southern District of New York.

*Orgeron*, 1994 WL 518313, at *1.

The Eastern District later relied on *Minnette* in *Karts International, Inc. v. Schweser*, No. Civ-A-99-1636, 1999 WL 1075937 (E.D.La. 11/30/99), an unreported case. Having determined that venue was not proper in the Eastern District of Louisiana, the court then interpreted 28 U.S.C. § 1406 to decide whether to dismiss or transfer the case.

> The decision whether to transfer an action pursuant to Section 1406(a) rests within the sound discretion of the trial court. The "interest of justice" standard may require that a complaint not be dismissed, but rather transferred so the plaintiff will not be penalized by "time consuming and justice-defeating technicalities." I find that it is in the interest of justice to transfer this case to the District of Nebraska, where the suit could have been brought and where venue is proper under 28 U.S.C. § 1391(a) as it is the place where the Defendant resides.

*Karts Int'l, Inc.*, 1999 WL 1075937, at *3.

Thus, there is a basis for this Court to rely on *Minnette* in making the determination that the interests of justice would be better served by transferring the case to a district with proper jurisdiction and venue, the Northern District of Oklahoma, rather than dismissing it outright.

### C. THE NORTHERN DISTRICT OF OKLAHOMA IS A PROPER AND CONVENIENT VENUE.

28 U.S.C. § 1391(b)(3) establishes venue in the Northern District of Oklahoma because a substantial part of the events or omissions giving rise to the claim occurred there. The Cherokee Nation is located in and has a connection to the Northern District of Oklahoma, as 8 of the 14 counties in Oklahoma that comprise (in whole or in part) the Cherokee Nation's tribal jurisdiction are in the Northern District of Oklahoma (see Rec. Doc. 13-1 at 2), as affirmed by the plaintiff in its Objection (Rec. Doc. 15 at 3, 7).

The plaintiff explicitly alleges that the underlying torts occurred in Oklahoma-that defendants sold, marketed, and distributed Actos into and "committed a tortious act within the Cherokee Nation and the States of Oklahoma, Arkansas, and Missouri, causing injury within the Cherokee Nation and the States of Oklahoma, Arkansas, and Missouri, out of which act(s) these causes of action arise" (Rec. Doc. 1 17, 23, 24, 27, 28; see also Rec. Doc. 13-1 at 2; Rec. Doc. 20 at 4), meaning that the allegedly injured tribe members:

- are located in Oklahoma (or Arkansas or Missouri);
- were injured or contracted bladder cancer in Oklahoma (or Arkansas or Missouri);
- visited doctors and tribal medical facilities, that have their medical records, in Oklahoma (or Arkansas or Missouri);
- sought and received coverage from The Cherokee Nation for Actos prescriptions in Oklahoma (or Arkansas or Missouri);

14

- sought and received coverage from The Cherokee Nation for medical expenses and treatment for bladder cancer in Oklahoma (or Arkansas or Missouri); and

- had their treatment paid for by The Cherokee Nation in Oklahoma (or Arkansas or Missouri), and, thus, any liens made basis of the plaintiff's claim for reimbursement were created there.

Further, the Northern District of Oklahoma would be familiar with the particular nature of and claims in this case-involving an Indian tribe, tribal law, and claims regarding insurance, medical coverage, reimbursement, and subrogation arising from tribal programs and rights, unique to Indian tribes-given its location in The Nation's tribal jurisdiction. For purposes of convenience of the parties, the Northern District of Oklahoma is conveniently located in Tulsa, Oklahoma, a large metropolis with an international airport. (Rec. Doc. 13-1 at 3; Rec. Doc. 20 at 7; Rec. Doc. 15 at 7).

**IV. CONCLUSION**

The Court declines to rule on the underlying substantive motions filed in the alternative by Takeda, but notes that the Court found Takeda's arguments regarding dismissal of the case persuasive. This Court has grave doubts as to whether The Cherokee Nation has a substantive claim based on the settlement as it did not comply with the Private Lien Resolution Program pursuant to the Settlement Program, or take any action to protect its alleged liens. This Court agrees with Takeda that The Cherokee Nation has repeatedly failed to comply with this Court's orders at the risk of abandoning its claims. Pursuant to this Court's Order for The Cherokee Nation to provide an outline of ALL of its claims, the Cherokee Nation was informed that "ANY CLAIM NOT INCLUDED ON THE OUTLINE DESCRIBED HEREIN SHALL BE DEEMED WAIVED AND ABANDONED". (Rec. Doc. 23-1).

However, this Court feels constrained to limit its action to a transfer under 28 U.S.C. § 1406 in the interests of justice. "As a general matter, a court's exercise of its discretion is not unbounded; that is, a court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents." In re *Volkswagen of America, Inc.*, 545 F.3d 304, 310 (5th Cir. 2008).

Therefore, Takeda's Motion to Transfer Venue [Rec. Doc. 13], as Amended [Rec. Doc. 27] is GRANTED, and these claims are TRANSFERRED to the Northern District of Oklahoma. The Court declines to rule on the underlying substantive motions filed in the alternative by Takeda.

THUS DONE AND SIGNED this  28  day of  November , 2017.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE